LOUIS MANDEL, Appellant, *v.* MAX LIEBMAN, Respondent.

Argued May 22, 1951; decided July 11, 1951.

*Simon Rosenzweig* and *Milton Paulson* for appellant. I. The Appellate Division committed error by considering the issue of whether the contracts between the parties were unconscionable. (*Binsse* v. *Wood*, 37 N. Y. 526; *Read* v. *Knell*, 143 N. Y. 484; *Wright* v. *Wright*, 226 N. Y. 578; *Wendell* v. *Leo*, 115 App. Div. 850; *Wisser* v. *O'Brien*, 44 How. Prac. 209; *Meiselman* v. *Crown Heights Hosp.*, 285 N. Y. 389; *Hoose* v. *Drumm*, 281 N. Y. 54; *Ehrenworth* v. *Stuhmer & Co.*, 229 N. Y. 210; *Burns* v. *Wilkinson*, 228 N. Y. 113; *Adams* v. *Irving Nat. Bank*, 116 N. Y. 606; *Matter of Levinsohn Corp.* [*Cloak, etc., Union*], 299 N. Y. 454; *Sahoff Corp.* v. *May Co. Real Estate*, 258 App. Div. 157.) II. In any event, the employment and settlement contracts were not unconscionable. (*Yonkers Fur Dressing Co.* v. *Royal Ins. Co.*, 247 N. Y. 435; *Friese* v. *Hoefler*, 38 Misc. 814; *Wood* v. *Duff-Gordon*, 222 N. Y. 88; *Moran* v. *Standard Oil Co.*, 211 N. Y. 187; *Grossman* v. *Schenker*, 206 N. Y. 466; *Meers* v. *Munsch-Protzmann Co.*, 217 App. Div. 541; *Meyers* v. *Nolan*, 18 Cal. App. 2d 319; *Mertz* v. *Mertz*, 271 N. Y. 466; *Shedlinsky* v. *Budweiser Brewing Co.*, 163 N. Y. 437.)

*Milton N. Mound* and *Richard Wincor* for respondent. I. The composite instrument sued upon provides for a tribute in perpetuity and is unconscionable and void. (*Jules-Wallace & Co.* v. *R. A. Management, Inc.*, 148 Misc. 180; *Porter* v. *Chicago & N. W. R. R. Co.*, 162 Wis. 446; *Keeler* v. *Taylor*, 53 Pa. 467; *Sargent* v. *McLeod*, 209 N. Y. 360; *Gray* v. *Hook*, 4 N. Y. 449; *Baksi* v. *Wallman*, 271 App. Div. 422, 297 N. Y. 456; *Martin* v. *Camp*, 219 N. Y. 170; *Buckley* v. *Surface Transp. Corp.*, 277 App. Div. 224; *Chiapparelli* v. *Baker, Kellogg & Co.*, 252 N. Y. 192.) II. No issue remains that could warrant a new trial. (*Richardson* v. *Crandall*, 48 N. Y. 348; *Cummings* v. *Union Blue Stone Co.*, 164 N. Y. 401; *O'Mara* v. *Dentinger*, 271 App. Div. 22; *Equity Service Corp.* v. *Agull*, 250 App. Div. 96; *Sprague* v. *Webb*, 168 App. Div. 292; *Baird* v. *Sheehan*, 38 App. Div. 7,

166 N. Y. 631; *Weil* v. *Neary,* 278 U. S. 160; *Saratoga Co. Bank* v. *King,* 44 N. Y. 87; *Matter of Abbey* [*Meyerson*], 274 App. Div. 389, 299 N. Y. 557.)

CONWAY, J. The defendant is an author, writer and director in the entertainment world. The plaintiff is an attorney who devotes himself to the business of acting as personal representative, advisor and manager for persons engaged in the entertainment world. On May 8, 1946, they entered into a written contract whereby defendant agreed to employ plaintiff " as his personal representative and manager " for a term of five years. Defendant agreed to pay to plaintiff, as compensation, 10% of all his earnings during the term of the contract, and thereafter on earnings from employments commenced during the term of the contract and continued or renewed or resumed beyond the term of the contract.

Shortly thereafter, a dispute arose between the parties as to the possession of specified business papers of defendant which plaintiff refused to return to defendant, despite demand therefor, because of defendant's failure to pay the percentage of earnings agreed upon in the contract of May 8, 1946. Defendant then obtained an order of Special Term, dated February 17, 1947, in a summary turnover proceeding, directing plaintiff to turn over the papers to defendant. A similar dispute with respect to additional papers thereafter arose, and defendant commenced another turnover proceeding against plaintiff which was referred to a referee. While this was pending, plaintiff commenced an action against defendant for the compensation allegedly due him under the contract of May 8, 1946.

On November 11, 1947, the parties, each of whom was then represented by his own attorney, entered into a written settlement agreement wherein they agreed to discontinue the proceeding and action. Defendant further agreed to recognize the " validity " of the contract of May 8, 1946, and to release plaintiff from all obligations to render any services thereunder. Plaintiff, on the other hand, agreed to waive the compensation provided for in the original contract in any year in which defendant should earn less than $20,000, and to turn over to defendant all contracts and documents belonging to defendant which he had in his possession.

Plaintiff subsequently commenced this action to recover the compensation allegedly due him for the period from May 8, 1948, to May 8, 1949, under the contract of May 8, 1946, as modified by the settlement agreement of November 11, 1947. The action was dismissed on the merits at the close of plaintiff's case upon the ground that the decision of Special Term in the first turn-over proceeding constituted a conclusive and binding adjudication that the original contract of May 8, 1946, created the relationship of attorney and client between plaintiff and defendant. The Trial Justice presumably was relying upon the rule that a client who has signed a retainer agreement with respect to some matter in controversy may discharge the attorney at any time, with or without cause, and relegate the attorney to a *quantum meruit* action for his services to the time of the discharge. We note at this point that the decision of Special Term in the first turnover proceeding was not in any way *res judicata* here. The most that that determination established was that the specific papers there involved had come into plaintiff's possession in the course of an attorney-client relationship. The May 8, 1946, contract recited that plaintiff had theretofore been acting for defendant " as lawyer, manager and advisor ".

The majority in the Appellate Division affirmed the judgment dismissing the complaint, but on a ground different from that advanced by the trial court. The majority in the Appellate Division went behind the settlement agreement of November 11, 1947, and held that the original contract of May 8, 1946, as modified by the settlement agreement, " was void, unconscionable and against public policy." (277 App. Div. 1097, 1098.) In reaching that conclusion, the court pointed out that, under the original contract of May 8, 1946, the plaintiff was not required to render any services to defendant; that plaintiff had introduced no proof of the rendition of any services to defendant; and yet defendant was required to pay to plaintiff " what might be called a tribute in perpetuity." The dissenting Justices in the Appellate Division agreed that under the special circumstances of this case the court was justified in going behind the settlement agreement to determine the meaning, validity and extent of obligation under the original contract, but that, since such determination and the defenses pleaded in the answer raised questions of fact, there should be a new trial.

We agree that there must be a new trial at which the court and jury, with adequate proof in the record, may, in the words of the dissenting opinion below, "scrutinize the entire transaction from both sides and in respect to both agreements." So many questions depend upon the proof which may be adduced at such new trial that we deem it inappropriate to discuss, generally, at this time, the legal relations between the parties under the original contract, as modified by the settlement agreement. Accordingly, we limit ourselves to consideration of the points on which we disagree with the majority in the Appellate Division.

It is apparent that the majority, in holding the contracts to be "unconscionable", thought that the obligations assumed thereunder by the parties were so shockingly disproportionate that they could not be enforced. It is commonplace, of course, that adult persons, suffering from no disabilities, have complete freedom of contract and that the courts will not inquire into the adequacy of the consideration. " ' If a person chooses to make an extravagant promise for an inadequate consideration it is his own affair ' (8 Holdsworth, History of English Law, p. 17). It was long ago said that ' when a thing is to be done by the plaintiff, be it never so small, this is a sufficient consideration to ground an action ' (*Sturlyn* v. *Albany,* 1587, Cro. Eliz. 67, quoted by Holdsworth, *supra*; cf. *Walton Water Co.* v. *Village of Walton,* 238 N. Y. 46, 51)." (CARDOZO, Ch. J., in *Allegheny Coll.* v. *National Chautauqua Co. Bank,* 246 N. Y. 369, 377.) "The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. It is competent for the parties to make whatever contracts they please, so long as there is no fraud or deception or infringement of law. Hence, the fact that the bargain is a hard one will not deprive it of validity." (17 C. J. S., Contracts, § 127, pp. 474–475; see *Youssoupoff* v. *Widener,* 246 N. Y. 174, 187, 188; *Ga Nun* v. *Palmer,* 216 N. Y. 603, 609; *Stettheimer* v. *Killip,* 75 N. Y. 282; *Earl* v. *Peck,* 64 N. Y. 596, 598–599; *Worth* v. *Case,* 42 N. Y. 362, 369–370; *Osgood* v. *Franklin,* 2 Johns. Ch. 1, 23, affd. *sub nom. Franklin* v. *Osgood,* 14 Johns. 527.)

Despite the general rule, courts sometimes look to the adequacy of the consideration in order to determine whether the

bargain provided for is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforcible according to its literal terms. (See 1 Corbin on Contracts, § 128, p. 400.) It has been suggested that an unconscionable contract is one " ' such as no man in his senses and not under a delusion would make on the one hand, and as no honest or fair man would accept, on the other '." (See *Greer* v. *Tweed,* 13 Abb. Prac. [N. S.] 427, 429; *Hume* v. *United States,* 132 U. S. 406; *Baxter* v. *Wales,* 12 Mass. 365, 366.) The inequality, Chancellor KENT said, "must be so strong and manifest as to shock the conscience and confound the judgment of any man of common sense." (*Osgood* v. *Franklin, supra,* p. 23.)

There might be some force to the claim of unconscionability in the case at bar if the contract could properly be construed as was done by the majority in the Appellate Division. That court held that under the express terms of the contract of May 8, 1946, plaintiff was not required to render any services to defendant. We do not think that that is a permissible construction under our decisions. (See *Wood* v. *Duff-Gordon,* 222 N. Y. 88, 90–91; *Moran* v. *Standard Oil Co.,* 211 N. Y. 187, 197; *Grossman* v. *Schenker,* 206 N. Y. 466, 469; *Pawlowski* v. *Woodruff,* 122 Misc. 695, affd. 212 App. Div. 871.) Here, the contract provides that it is " MUTUALLY AGREED BY THE PARTIES ", among other things, that the defendant " hereby employs " the plaintiff " as his personal representative and manager to use his ability and experience as such manager and personal representative in the guidance and furtherance " of defendant's career and " to advise him in connection with all offers of employment and contracts for services, and conclude for him such contracts." Thus, there is a clear implication that plaintiff was required to do that for which he was employed. Even if the contract had merely provided that plaintiff was employed " as personal representative and manager ", with no further description of his duties, that would have been sufficient, for it could be shown that to these parties, in a specialized field with its own peculiar customs and usages, that phrase was enough to measure the entire extent of plaintiff's required services. (See *Meyers* v. *Nolan,* 18 Cal. App. 2d 319, 322–323.)

The further provision in the contract — that plaintiff " shall only devote as much time and attention to the activities and affairs " of defendant " as the opinion and judgment " of plaintiff " deems necessary "—must be given a reasonable interpretation consonant with the purpose of the contract. It would be an unnatural and bizarre construction of the document to hold that that provision was intended to excuse plaintiff from any obligation to render service under the contract, while continuing to reap benefits thereunder. The provision seems merely to constitute an attempt on the part of plaintiff to protect himself from excessive and unreasonable demands upon his time. See *Meyers* v. *Nolan* (*supra*, p. 323) where it was said: " The fact that the contract provided that the managers could devote as much time to defendant's affairs as they deemed necessary does not destroy its mutuality. The very nature of the business of the parties was such that representation of other actors was to be expected. The clause was evidently inserted to avoid misunderstanding on the subject and to more clearly define the rights and obligations of the managers." Of course, as defendant urges, it is theoretically possible that plaintiff, under this provision, could deem it necessary to devote no time to the activities and affairs of defendant, but in that event, it is clear that plaintiff would not be performing the contract but would be breaching it and foregoing his right to compensation.

Since plaintiff, as we hold, was required to render some service to defendant under the contract, it cannot be said that the contract was unconscionable. Defendant was the best judge of the necessity and worth of plaintiff's services, and of the price he wished to pay to obtain them. In return for plaintiff's contractual obligation to render such services, defendant agreed to pay as compensation an amount based upon a percentage of his earnings. It is not for the court to decide whether defendant made a good or bad bargain. We fail to see how the contract can be described as one " ' such as no man in his senses  *  *  * would make ' " and " ' no honest or fair man would accept ' " (*Greer* v. *Tweed, supra,* p. 429; *Hume* v. *United States, supra,* p. 23), or one which would " shock the conscience and confound the judgment of any man of common sense " (*Osgood* v. *Franklin, supra*), or even one which is " so extreme as to appear

unconscionable according to the mores and business practices of the time and place '' (1 Corbin on Contracts, § 128, p. 400), particularly since, as we are told, without denial the contract of May 8, 1946, is similar in most respects to contracts in current and general use in the entertainment industry. (See as to California agents under the statute applicable there, 4 Nichols Cyclopedia of Legal Forms [1950 Pocket Supp.], § 4.989b; Lindey, Motion Picture Agreements [1947], Form IV-P, pp. 346–348.)

There is thus no need at this time to discuss the measure of compensation provided in the contract which the Appellate Division characterized as '' a tribute in perpetuity.'' We note only, without passing upon the matter, that a question may be raised as to the validity or enforcibility of one provision relating to compensation. Defendant agreed that any future earnings of his in the entertainment world '' shall be due to the opportunities now procured for him '' by plaintiff. This provision would seem to create a conclusive presumption that any employments obtained by defendant during the term of the contract, and any continuance or renewal thereof thereafter, shall be deemed to have been due to the efforts of plaintiff, entitling the latter to the agreed percentage thereon. Somewhat comparable provisions have been held unenforcible. (See *Hamlin* v. *Wheelock*, 42 Hun 530; *Wright* v. *Fulling*, 104 App. Div. 49.) The question, however, is not presented on this record for, while defendant did testify as to the amount of his earnings for the year in question and the different sources thereof, there was no evidence as to which sources were referrable to plaintiff's advice, guidance and assistance, and which were not. (See *Mayer* v. *Fuller*, 17 Misc. 611, 612–613 [App. Term, 1896, McAdam, J.].) Moreover, as already indicated on pages 91 and 92 (*supra*), defendant had terminated plaintiff's employment prior to the settlement contract, and under the settlement contract has released plaintiff from all obligations to render any services under the prior employment contract. Likewise, there is no occasion now to consider the effectiveness of the provision that the contract was to be binding upon the parties and '' their heirs, executors, administrators and assigns '' as against the rule that contracts for personal services terminate with the death of one of the parties.

Nor may the dismissal of the complaint be predicated upon the ground, not raised at the trial, that plaintiff had failed to adduce proof of the rendition of any services for defendant under the contract. There appears in this record an admission by defendant's attorney in an affidavit filed in the prior turn-over proceeding that plaintiff had rendered certain services to defendant for which compensation might be due. But, even assuming that there was a failure of proof in this respect, that was not a proper basis for affirming the judgment which had dismissed the complaint on another and untenable ground. If the question had been raised at the trial, the plaintiff might easily have obviated the claimed defect by introducing the required evidence. (See Cohen, Powers of the New York Court of Appeals, § 155; 4 Carmody on New York Practice, § 1349, pp. 3120–3122; *Binsse* v. *Wood,* 37 N. Y. 526, 532; *Wisser* v. *O'Brien,* 44 How. Prac. 209, 211.)

Finally, we do not think that the contract of May 8, 1946, at least upon its face, may be held to be a retainer agreement between attorney and client with respect to some matter in controversy under which the client may discharge the attorney at any time, with or without cause, and relegate the attorney to an action for his services to the time of discharge. (See, e.g., *Matter of Montgomery,* 272 N. Y. 323, 326; *Lurie* v. *New Amsterdam Cas. Co.,* 270 N. Y. 379, 381; *Martin* v. *Camp,* 219 N. Y. 170, 174.) Here, plaintiff was employed as defendant's personal representative and manager, a position which might well have been filled by a nonlawyer. As a lawyer, plaintiff might be called upon to use his legal training in handling defendant's affairs, but that is not sufficient, as a matter of law, to transform an otherwise binding contract of employment into a contract at will on the part of the employer. An attorney, like any other man, may enter into a contract of employment which can be enforced against the employer, and that is so even though the employment may envisage the exercise of his legal skills and ability. (See *Greenberg* v. *Remick & Co.,* 230 N. Y. 70, 73.)

Likewise, it cannot be said as matter of law that the contract was illegal and void for the reason that plaintiff, in violation of section 172 of the General Business Law, was conducting a theatrical employment agency without a license therefor. By

express exemption in subdivision 4 of section 171 of the General Business Law, a person engaged in the business of managing " entertainments, exhibitions or performances, or the artists or attractions constituting the same, where such business only incidentally involves the seeking of employment therefor " is not required to be licensed. As noted, plaintiff was employed as defendant's " personal representative and manager ". It was specifically provided that " this contract does not in any way contemplate that the second party [plaintiff] shall act as agent for the purpose of procuring further contracts or work " for defendant, the plaintiff was " not required in any way to procure " such contracts or work, and that in the event defendant " needs additional employment or work then an agent shall be employed by the second party [plaintiff] to procure such employment, and the services of said agent shall be separately paid for " by defendant. (See *Hyde* v. *Vinolas,* 234 App. Div. 364, 365; *Meyers* v. *Walton,* 76 Misc. 510 [App. Term, 1912, Lehman, J.]; *Pawlowski* v. *Woodruff,* 122 Misc. 695, affd. 212 App. Div. 871, *supra; Allen* v. *Brice,* 165 Misc. 181; *Gervis* v. *Knapp,* 182 Misc. 311, 313.)

The judgments below should be reversed and a new trial granted, with costs to abide the event.

Loughran, Ch. J., Lewis, Desmond, Dye, Fuld and Froessel, JJ., concur.

Judgments reversed, etc.