Richard H. FISH and Evalyn Preston, Appellants,

v.

AIR–O–FAN PRODUCTS CORPORA-TION, a Corporation, Appellee.

AIR–O–FAN PRODUCTS CORPORA-TION, a Corporation, Appellant,

v.

Richard H. FISH and Evalyn Preston, Appellees.

No. 16793.

United States Court of Appeals
Ninth Circuit.

Dec. 6, 1960.

Naylor & Neal, James M. Naylor, Frank A. Neal, San Francisco, Cal., for appellants.

Huebner & Worrel, Richard M. Worrel, Chalmers Lones, Fresno, Cal., Carl Hoppe, San Francisco, Cal., for appellee.

Before BARNES, JERTBERG and MERRILL, Circuit Judges.

BARNES, Circuit Judge.

Richard H. Fish and Evalyn Preston brought suit in the district court for infringement of a patent issued to Fish on September 4, 1956, No. 2,761,731, covering an agricultural spraying machine. Evalyn Preston is the assignee of a one-half interest in and to the invention and patent. Jurisdiction below rested on 35 U.S.C. § 281 and 28 U.S.C. § 1338. This court has jurisdiction of the appeal. 28 U.S.C. § 1291.

On October 1, 1958, Richard H. Fish was hired as a worker by Air-O-Fan (originally known as Robinson Fan Co.), a corporation manufacturing machinery, located in Gilroy, California. After a few days he was made shop foreman and later he became shop superintendent. Ultimately, he was made vice president in charge of operations.

The firm, which produced industrial fans and agricultural sprayers, was originally small and in serious financial difficulties. Fish, whose salary was $350 per month, worked diligently in aid of the firm's fortunes. At one time he was instrumental in getting a local concern to buy $15,000 worth of machinery. For such special efforts, he received bonuses and commissions. Fish also worked on the design and improvement of several machines. In several instances, he executed assignments of those designs to the company. This design work and the assignments were generally undertaken in conjunction with the company's president and general manager, David Wright.

One of Air-O-Fan's chief products was an agricultural sprayer, Model D. This product was defective in that it operated unevenly in producing the spray: there was an imbalance in the air distribution system within the machine. Mr. D. J. Kraus, a customer-dealer of Air-O-Fan's, was aware of the problem created by the operation of the Model D sprayer. At a county fair in 1950, he saw the "Bean" spraying machine, which implemented principles embodied in another machine, referred to herein as the "Andrews patent." Kraus developed the idea of applying certain principles found in the Bean machine to Air-O-Fan's Model D. He communicated this idea to Air-O-Fan's sales manager, Russell Wright. Wright directed Kraus to Fish. Under Fish's direction and with the use of company time, labor and materials, the Kraus idea was applied to the Model D sprayer. This "idea" involved modification of the fan housing to direct air away from the bottom and toward the top of the machine in order to create a more even spray.

In September of 1951 the company's management was reorganized. Mr. David Wright left the company; and Fish became vice president in charge of operations, receiving a salary of $600 per month. His commissions for sales had previously been discontinued. A contract covering Fish's employment was drafted at this time, but was never executed. In early 1952, Fish was asked to execute an assignment of the invention involved in the modification of the fan housing on the Model D sprayer. Fish refused to execute the assignment, and as a consequence, he was discharged in May 1952. Two days after being discharged he conferred with a patent attorney, and on July 1, 1952, Fish applied for a patent on the fan housing. On September 4, 1956, the patent presently involved was issued. Fish then proposed to the president of Air-O-Fan that they settle his claim, but the parties were unable to come to terms.

The trial court held that the patent legally belonged to Air-O-Fan and not to Fish. The court did not deem it necessary to require appellants to execute a transfer of the patent to Air-O-Fan. The court rejected Air-O-Fan's contention that the patent was not a valid one.

Appellants Fish and Preston have appealed from that part of the judgment denying them relief. Air-O-Fan, on a protective cross-appeal, contends that if the trial court's findings on ownership of the patent and noninfringement are overturned, so should the finding that there was a valid patent.

There are thus three issues before us:

1. Did the patent properly belong to Fish or to Air-O-Fan?

2. Was the court right in finding that there was no infringement?

3. Was the patent valid?

We will consider each of these points briefly.

Appellants, in their specifications of error, recognize that the judgment of the trial court is based upon certain findings of fact, namely: (1) that the "idea" for the invention came from Mr. Kraus, not Fish; (2) that the idea was disclosed by Kraus to the company, not to Fish; (3) that the development of the idea into a "concept," and from concept to patent, was accomplished by the company; (4) that admittedly "reduction to practice was accomplished through utilization of the company's time, workmen, and materials"; (5) and that consequently the patent was at all times the property of the company. Unfortunately, appellants' argument never comes to grips with the problem inherent in such findings, but argues almost exclusively that the court erred by determining, "in effect," that Fish was bound by an implied contract requiring him to assign inventions made during his employment (Specifications of Error, Nos. 12, 13). By confining his argument to this secondary issue, appellant Fish misses the point, and never specifies wherein the trial court erred in its crucial finding that the company at all times *owned* the patent.

■ There is ample evidence to support the court's finding that the patent was always the sole property of Air-O-Fan. There is evidence that Fish and others believed that Fish's regular duties included the design and development of machines for his employer; despite the fact that he was originally hired as shop foreman at a rather low compensation. Fish so stated to others.

More conclusive, it is not denied by Fish that he made other "inventive contributions" on at least four occasions, and assigned them to Air-O-Fan.[1] While appellants admit that this fact may support the inference that Fish was contractually obligated to assign inventions, they assert "such inference may be rebutted." If so, that conclusion that it is rebutted must be made by the trial court, not by this court.

There is evidence likewise to support the finding that Fish's employment required him to design machines and assign the inventions to the company. His co-designer so assigned the machines to the company as part of his duties, and understood Fish did the same. The court did not commit clear error in finding (impliedly) the obligation to assign inventions to be a term of Fish's employment, if such an implied finding is, in fact, necessary to support the trial court's decision.

We find that this case is not controlled by Hapgood v. Hewitt, 1886, 119 U.S. 226, 7 S.Ct. 193, 30 L.Ed. 369,[2] upon which appellants strongly rely.

---

1. Cf. (a) Ex. C, Patent No. 2,692,454, "Duster," Inventors: David Porter Wright and Richard Harrison Fish, assignors to Air-O-Fan Products Corporation, filed March 27, 1950, patented October 26, 1954; (b) Ex. E, Patent No. 2,641,503, "Duplex Spray Machine," Inventors: David Porter Wright and Richard Harrison Fish, assignors to Air-O-Fan Products Corporation, filed March 27, 1950, patented June 9, 1953; (c) Ex. F, Patent No. 2,643,155, "Side Delivery Spray Machine," Inventors: David Porter Wright, and Richard Harrison Fish, assignors to Air-O-Fan Products Corporation, filed April 10, 1950, patented June 23, 1953; (d) Ex. D, Patent No.

2,639,940, "Orchard Spraying Machine," Inventor: Richard Harrison Fish, assignor to Air-O-Fan Products Corporation, filed October 30, 1950, patented May 26, 1953.

2. In that case the Supreme Court sustained a demurrer and dismissed a complaint by the employer because the complaint did not reveal an agreement that the employer was to have title to the inventions. While in some respects the Hapgood facts may be even stronger for the employer than are the facts in this case, there are strong distinctions between Hapgood and the case at bar. In Hapgood, the employee had not previous-

Appellants next urge there could be no valid implied contract to assign because there was no adequate consideration for that agreement. If Fish's regular duties included the design of new machinery this point must also be rejected. Fish therefore urges that any duty to assign inventions was beyond the call of his regular duties. He does not, however, point out why this particular duty must be found to have been other than a term of his employment. If the judgment can be supported by a finding of an implied contractual obligation to assign inventions, such obligation may on the same evidence be found to have been a part of Fish's employment. Thus, there was adequate consideration to support the obligation to assign if there was adequate consideration to support the employment contract as a whole. While Fish's starting salary was only $350, he was raised to $600 over the years, and he received at least one bonus of $2,200 during a year in which the company had profits of but $750. Considering the company's financial condition, it would seem that the consideration paid Fish was not grossly inadequate. Further, adequacy of consideration is generally for the parties to determine; if the contract is supported by consideration, courts of law will not invalidate it because the consideration is too small. Mandel v. Liebman, 1951, 303 N.Y. 88, 100 N.E.2d 149.

We conclude the trial court was not clearly in error in finding that the patent from its inception until its final development was the property of Air-O-Fan. If the judgment must rest upon a finding that Fish was impliedly obligated to assign inventions, there is adequate evidence to support such a finding. Such evidence would also support a finding that such obligation was a part of Fish's duties as an employee; consequently, his remuneration under the employment contract provides consideration for this particular contractual obligation.

We next consider whether there was an infringement of the patent in issue. In Finding XX, the trial court held that there was no infringement. This naturally follows from the finding that Air-O-Fan owned the patent, since Air-O-Fan could not infringe a patent which it owned.

Thus the infringement issue need be considered only if the trial court is reversed on its findings regarding ownership of the patent. We do not so reverse.

The invalidity of the patent is raised by the cross-appeal. Air-O-Fan requests that if the trial court is reversed on the issue of equitable ownership of the patent and the issue of infringement, then the determination of validity should also be overturned. Because of what we have said above, we need not reach the question of validity.

The judgment below is affirmed.

---

ly designed several machines and then assigned the inventions to the company. Furthermore, in the instant case, there was a finding that Fish was "one of the company"; he was more than an employee. There is no such allegation in Hapgood other than the fact that the employee there agreed to take the position of manufacturing department superintendent. The fundamental distinction, however, is that in the instant case, the court impliedly found, from the evidence adduced at trial, that there did exist an agreement requiring the employee to assign his inventions to the company; in Hapgood, the courts found that the facts alleged in the complaint did not suggest the existence of such an agreement. Whether an implied contract exists is a question of fact, and each case is factually different. Hapgood is not so factually similar to this case that it commands us to make the very same inferences as were made there.