**SMITH, JACKSON & COMPANY, INCORPORATED, Plaintiff,**

v.

**NEOTEC CORPORATION, Defendant.**

### No. 73 Civ. 3750.

United States District Court, S. D. New York.

July 1, 1977.

Tobin, Decof, LeRoy & Silverstein, Woonsocket, R. I., for plaintiff, by Andrew Kuchinsky, New York City, of counsel.

Morris R. Sherman, New York City, for defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

The plaintiff, Smith, Jackson & Company, Incorporated, acted as underwriter in connection with an April 24, 1969 public offering of common stock by defendant Neotec Corporation. At the time, Neotec was a designer and manufacturer of sophisticated audio and optical equipment which it sold for governmental and industrial use. Contemporaneous with the public offering, Neotec engaged Smith, Jackson to act as its financial consultant. Smith, Jackson now sues for breach of that agreement. A trial has been held and this opinion constitutes my findings of fact and conclusions of law.

The parties do not dispute the existence and validity of the consultation agreement which is embodied in an April 24, 1969 letter to Smith, Jackson, signed by Neotec, and accepted and signed by Smith, Jackson. It is undisputed that the language of the contract was substantially formulated by Smith, Jackson. It provides as follows:

"This will serve to confirm the arrangement under which we have retained you to act as Financial Consultant to the undersigned:

"1. Your engagement hereunder shall be for a term of four years commencing as of April 24, 1969.

"2. You will receive a fee of $12,500 per annum as compensation for your services. Such fee is to be paid at the beginning of each engagement year. Your signature at the bottom of this letter will serve to acknowledge (1) the receipt by you of $12,500 being your fee for the engagement year ending April 23, 1970; and (2) your agreement not to incur any individual disbursement in excess of $25 or disbursements in the aggregate of $250 without our prior consent.

"3. Your services as Financial Consultant shall include consultations with officers and directors relative to financial matters concerning the Company, financings, mergers, acquisitions, relations and dissemination of financial and other information to the financial community and to the public at large.

"4. It is understood and agreed that you shall devote to your services hereunder such amount of time as you in your discretion deem necessary and further that you shall have the absolute right to determine which of your officers or employees shall render such services on your behalf.

"5. You agree that any information concerning the Company's operations or related matters which you obtain or are otherwise advised of as a result of your acting as our Financial Consultant shall be kept in the strictest confidence by you and shall only be used by you to enable you to render your services to us hereunder.

"6. It is agreed that in the event you shall bring to our attention any company, firm or business for acquisition or merger, or in the event you shall arrange for us any financing, whether of equity or debt, or sell for us on our behalf any of our securities, you shall receive compensation therefore separate from the above mentioned remuneration, which compensation shall be mutually agreed to between us."

There is no dispute that Neotec has paid Smith, Jackson in full for the period from April 24, 1969 to April 23, 1972, the first three years of the contract but has paid

nothing for the fourth year. Originally, defendant sought to recover the $37,500 paid during the first three years but withdrew the counterclaim at trial.

As a defense to plaintiff's claim for compensation for the fourth year, Neotec asserts that Smith, Jackson failed to perform services during the third and fourth years despite numerous demands.

At trial, Stephen Smith, the principal force behind plaintiff, testified that in fulfillment of the corporation's obligations he reviewed financial press releases and annual reports of Neotec, mailed data on Neotec to customers of Smith, Jackson and to broker-dealers, assisted in locating potential purchasers of Neotec products and responded to telephone inquiries from Robert D. Rosenthal, president of Neotec. He admitted that during the fourth year of the contract he performed no services for Neotec other than reviewing its annual report.

Smith produced the press releases which he had reviewed from October 1969 through August 1970 (Plaintiff's Exhibit D); no press releases were produced for the third and fourth years. In the first year of the contract, Smith assisted Neotec with an issuance of subordinated debentures (Plaintiff's Exhibits E and F). There is also proof that in April 1970 and again in September 1970, Smith provided leads to Neotec on potential customers (Plaintiff's Exhibits H–J). In 1970, Smith assisted in having Neotec stock quotations listed through the National Association of Securities Dealers (N.A.S.D.). Smith testified that in the first two years of the contract he met with Neotec representatives over a dozen times and visited the Neotec factory twice.

In the third year of the contract Smith requested that Neotec register stock warrants which his firm had received as compensation in connection with the 1969 public offering; he assisted Neotec in preparing the registration. I find no credible proof of any other services being performed during the last two years of the contract other than review of Neotec's annual report.

Robert Rosenthal, president of Neotec and a nuclear engineer by training, testified that Smith had instructed him to use the telephone as the exclusive means of communications; Smith acknowledged this direction in his testimony. Rosenthal swore that in the third year of the contract he telephoned Smith approximately fifteen times seeking his advice but received no response other than a call at the beginning of the third year regarding the registration of the warrants and a few calls at the beginning of the fourth year complaining of Neotec's failure to pay the annual fee. Although Rosenthal acknowledged that his firm had cash flow difficulties, he indicated that his decision to withhold payment for the fourth year was based primarily upon the failure of Smith, Jackson to perform services during the third year. At a September 11, 1972 conference, representatives of the two firms attempted to resolve the dispute but were unsuccessful.

Smith denied receiving complaints from Rosenthal and denied receiving calls from Rosenthal which went unanswered.

As trier of fact, I find the testimony of Rosenthal to be credible. While my conclusion is based primarily upon the demeanor of the witnesses, I note that Stephen Smith and Smith, Jackson are under a permanent injunction against future securities violations arising out of their activities with regard to the stock of *Pro-Tech Programs, Inc.*, 73 Civ. 1176 (IBW) (Defendant's Exhibit 3) and that public proceedings have been commenced against Smith by the Securities and Exchange Commission charging securities law violations in connection with the stock of Pelorex, Inc. (Defendant's Exhibit 4).

Smith has argued that notwithstanding any nonperformance in the fourth year, he may nevertheless recover because the contract provides that "you shall devote to your services hereunder such amount of time as you in your discretion deem necessary . . . ." That argument is best answered in the words of the New York Court of Appeals in *Mandel v. Liebman*, 303 N.Y. 88, 95, 100 N.E.2d 149, 153 (1951):

"The . . . provision in the contract—that plaintiff 'shall only devote as much time and attention to the activities

and affairs' of defendant 'as the opinion and judgment' of plaintiff 'deems necessary'—must be given a reasonable interpretation consonant with the purpose of the contract. It would be an unnatural and bizarre construction of the document to hold that that provision was intended to excuse plaintiff from any obligation to render service under the contract, while continuing to reap benefits thereunder. The provision seems merely to constitute an attempt on the part of plaintiff to protect himself from excessive and unreasonable demands upon his time."

The Court further noted

". . . that plaintiff, under this provision, could deem it necessary to devote no time to the activities and affairs of defendant, but in that event, it is clear that plaintiff would not be performing the contract but would be breaching it and foregoing his right to compensation."

303 N.Y. at 95, 100 N.E.2d at 153.

The failure of Smith, Jackson to respond to the Neotec inquiries during the third year justified Neotec's withholding of payment at the beginning of the fourth year; the total lack of performance in the fourth year defeats Smith, Jackson's claim for compensation.

Settle judgment for defendant on five days' notice.