(May 20, 1986)

■ CHARLES R. ROBINSON, Appellant, v MARY L. ROBINSON, Respondent.—Order of the Supreme Court, New York County (Ira Gammerman, J.), entered October 25, 1985, which denied plaintiff-appellant Charles Robinson's motion for summary judgment on his first cause of action seeking specific performance of that provision of the parties' separation agreement entitling him to possession of penthouse apartment A located at 160 East 48th Street, unanimously reversed, on the law, without costs, to the extent of granting plaintiff's motion for summary judgment as to his first cause of action.

Plaintiff Charles R. Robinson and defendant Mary L. Robinson were married in 1971. In August 1979 defendant informed plaintiff that she wanted a separation. Nearly one year later, on July 6, 1980, the parties executed a separation agreement. Immediately thereafter, they went to the Dominican Republic where they obtained a bilateral divorce on July 9, 1980. The separation agreement was incorporated but not merged into the divorce decree.

The separation agreement provided in its eighth article that defendant would have possession of the couple's rent-stabilized penthouse apartment at 160 East 48th Street between August 1980 and August 1982. At the conclusion of this period it was agreed that plaintiff would be entitled to possession. In August 1982 the parties decided to execute a modification to the separation agreement. The modification, drafted by defendant in her own handwriting, provides that defendant may continue in possession of the apartment until August 1, 1984, at which time it is expressly stated that possession is to be turned over to plaintiff.

Despite plaintiff's timely demand, defendant did not vacate the premises on or before August 1, 1984, and has not done so since. Plaintiff, therefore, began this action for specific performance of that provision of the modified separation agreement entitling him to possession of the apartment. Defendant has responded by challenging the validity of the separation agreement, which she claims is unfair and unconscionable in its terms and the product of plaintiff's coercion and overreaching.

Under the doctrine of comity the courts of this State generally recognize foreign judgments. (Greschler v Greschler, 51 NY2d 368, 376.) Accordingly, a party who has properly appeared in a foreign action is ordinarily precluded from attacking the resulting judgment by bringing a collateral New York proceeding. (Supra.) Only where there has been a showing

that the foreign judgment was fraudulently obtained *(see, e.g., Tamini v Tamini,* 38 AD2d 197), or that recognition of the judgment would conflict seriously with a compelling public policy *(see, e.g., Mertz v Mertz,* 271 NY 466), can a collateral attack be entertained. *(Greschler v Greschler, supra,* at p 376.)

In challenging the subject separation agreement defendant necessarily challenges the divorce decree into which it was incorporated. This is precisely the sort of collateral attack upon a foreign judgment forbidden by the doctrine of comity. Defendant appeared in the bilateral Dominican divorce proceeding and makes no allegation that the foreign court's authority to grant the divorce or determine the parties' economic and property rights was somehow vitiated by plaintiff's fraud. Rather, defendant claims simply that the separation agreement *is unfair and was made so by plaintiff's* overreaching. On the record before us it does not appear that there was any overreaching by plaintiff or consequent unfairness. Yet, even if there were, mere unfairness unaccompanied by fraud would not affect the validity of a foreign judgment protected under the doctrine of comity. *(Greschler v Greschler, supra,* at p 376.)

Not only is the complained-of unfairness inadequate to remove the separation agreement and the divorce decree of which it is a part from under the aegis of the comity doctrine by reason of fraud, it is also insufficient to accomplish the same end on public policy grounds. We note that the separation agreement was executed nearly a year after defendant first indicated that she wanted to leave plaintiff. There was thus ample time for the parties to reach an understanding reflecting their respective wishes. Although defendant now makes much of the fact that she was not represented by counsel and attributes this to plaintiff's intimidating threats, there is every indication that defendant could have retained counsel had she elected to do so. Indeed, the agreement recites in its ninth article that the parties are aware of their right to legal representation and have chosen not to retain attorneys. It is further stated that their decision to go unrepresented will not affect the agreement. Moreover, the agreement is drafted in plain, easily understood language. Defendant, a graduate of a prestigious business school and a sophisticated businesswoman of considerable *accomplishment, could hardly fail to* comprehend the agreement's terms or their effect.

Certainly, the agreement does not by its provisions manifest any inequity. Defendant complains that the agreement deprives her of alimony and makes inadequate allowance for the

services she rendered her husband's legal practice during its formative stages. She notes that the agreement was executed and the divorce decreed just prior to the July 19, 1980 effective date of the Equitable Distribution Law (Domestic Relations Law § 236 [B]), pursuant to which her share of the marital property would likely be increased. We observe, however, that defendant is a corporate vice-president with a salary of $75,000 a year. In addition, she owns several businesses, three of which are mentioned in the separation agreement. Clearly, as is stated in the agreement, defendant has no need of plaintiff's support. Instead, the record indicates persuasively that defendant's predominant concern since the separation's inception was to expeditiously disentangle herself from plaintiff's personal and financial affairs. By her own admission at deposition, defendant knew of the advent of the Equitable Distribution Law. She nevertheless agreed to the timing of the divorce because she "just wanted this whole thing to be over."

These circumstances do not bespeak inequity or overreaching; still less do they offend any compelling public policy so as to warrant entertaining a collateral challenge to a foreign judgment (see, Greschler v Greschler, supra, at p 377).

Rather, the policy which must be upheld in this proceeding, and which would require the result reached even if the integrity of a foreign judgment were not at issue, is that favoring adherence to the terms of separation agreements. If such agreements are to be practicable and efficacious to the contracting parties as well as society at large, they must be accorded some degree of finality. (Oberstein v Oberstein, 93 AD2d 374, 378-379.) They cannot be altered, or, as is requested by defendant, rescinded, simply because a party becomes dissatisfied. There is accordingly a heavy presumption that a separation agreement manifests the parties' true intentions. (Surlak v Surlak, 95 AD2d 371.)

It is clear as a matter of law that this presumption is not and cannot be overcome by the defendant in this case. The agreement at issue was drawn and modified by two sophisticated individuals. Their intentions, particularly those regarding the subject apartment, are clearly stated and were confirmed in action for four years during which time no complaint was voiced. Having acquiesced in the agreement and accepted its benefits for so extended a period, defendant may not now have it set aside as her obligations become due. (Stoerchle v Stoerchle, 101 AD2d 831.) Concur—Murphy, P. J., Sullivan, Ross, Milonas and Kassal, JJ.