OPINION OF THE COURT
Marvin E. Segal, J.
FINDINGS OF FACT
The parties were married in Iran on February 19, 1977 in an orthodox religious ceremony. After the marriage, the parties moved to Israel. The parties have four children, to wit: Ronit, born December 16, 1977; Yair, born December 6, 1981; Raphael, born January 17, 1986, and Ariel, born October 30, 1987. The wife and Ronit and Yair moved to the United States in or about October 1985; the husband moved here on or about December 20, 1985. The two younger children were born in this country. The parties lived in an apartment in Queens County for approximately two years. In or about September 1988, they rented a house which is the present residence of the wife and children. The monthly rental expense, exclusive of utilities, totals $2,750.
The wife is 38 years old. She is not fluent in the English language and has never been employed. The husband is 42 years old. He owns and operates clothing stores in Manhattan. He also earns rental income from leases he holds on various commercial properties in Manhattan. The husband alleges that the parties began to experience marital difficulties in December 1990. He accuses the wife of "having an affair” with his best friend and remaining away from home. On or about March 7, 1991 the parties executed and acknowledged a document entitled "Separation Agreement”. The agreement provides that the husband shall have custody of the children, subject to the wife’s right of visitation. It requires that the husband support the children without contribution from the wife, and that he pay the wife maintenance of $1,000 per month for a period of six years. The agreement further contains a waiver of inheritance rights and sets forth that all assets have been divided to the parties’ mutual satisfaction. On or about April 24, 1991, the husband obtained a religious divorce, "a Get”, from the Rabbinical Court of the Rabbinical Alliance of America. The husband alleges that during the religious divorce proceedings, the parties executed a second *705 matrimonial agreement. This agreement requires that the husband pay the wife a lump sum of $125,000 in lieu of maintenance. It also provides that in the event custody of the children is transferred to the wife, the husband would pay the sum of $6,000 per month for the support of the children. The husband retained counsel in Israel and contends that he obtained a formal decree of divorce from the Tel Aviv Jaffa Rabbinical Court in Israel on or about February 11, 1992.
In or about September 1991, the wife returned to the marital home and the husband moved out and purchased a home for himself nearby. He alleges that the wife’s return to the home was predicated upon the termination of her "relationship with her boyfriend”. The husband alleges that since September 1991, he has fully complied with the terms of the parties’ separation agreement; that he paid the wife $126,000, and has paid child support in compliance with the agreement.
In or about July 1992, the wife commenced an action for divorce in this State. Thereafter, she moved for omnibus pendente lite relief. She acknowledges that the husband paid her the sum of $126,000 and further states that he has paid expenses of $9,500 per month for the support of herself and the children. She alleges, however, that the husband earns $850,000 per year and that based upon his income, the voluntary support paid to the wife is insufficient to meet her needs and those of the children. The husband contends that as Israeli citizens, the parties were validly divorced by the State of Israel on February 11, 1992. Based upon the Israeli decree of divorce he seeks an order dismissing the wife’s complaint for divorce. In the alternative, the husband argues that the parties executed two valid and binding separation agreements; that he has fully complied with his obligations under said agreements and that the wife is therefore precluded from seeking pendente lite relief unless and until said separation agreements are set aside.
The wife denies the husband’s allegations that she committed adultery. She responds that she left the marital home and sought refuge with relatives because the husband threatened her life. The wife alleges that the separation agreements and the "Get” were achieved through "fraud, diversion of assets, brutalization, duress and threats”. She asserts that the separation agreement dated March 7, 1991 was executed by her as a "blank” piece of paper; that she had no counsel to represent her and no disclosure of the husband’s assets or income. The wife further asserts that the agreement is unconscionable on *706 its face; that the husband’s affidavit of net worth sets forth assets of over $500,000 and the distribution to her of one fifth of the disclosed marital assets is inequitable. She has amended her complaint so as to set forth a cause of action seeking judgment rescinding the separation agreements and declaring the Israeli decree of divorce to be a nullity.
CONCLUSIONS OF LAW
The courts of this State will generally accord recognition to bilateral foreign judgments of divorce, including the terms and provisions of any agreements incorporated therein, under the doctrine of comity. (Greschler v Greschler, 51 NY2d 368; Schoenbrod v Siegler, 20 NY2d 403; Rabbini v Rabbini, 178 AD2d 637; see generally, Restatement [Second] of Conflict of Laws § 84, at 169-171.) Absent some showing of fraud in the procurement of the foreign country judgment (Feinberg v Feinberg, 40 NY2d 124) or that recognition of the judgment would do violence to some strong public policy of this State (see, e.g., Greschler v Greschler, 51 NY2d 368, 377, supra; Intercontinental Hotels Corp. v Golden, 15 NY2d 9, 13; Mertz v Mertz, 271 NY 466), a party who properly appeared in the action is precluded from attacking the validity of a foreign country judgment in a collateral proceeding brought in the courts of this State. (Greschler v Greschler, supra, at 376.) A separation agreement incorporated in a valid foreign divorce judgment is also immune from challenge under the doctrine of comity, because such a challenge would essentially constitute an impermissible collateral attack on the foreign judgment. (Greschler v Greschler, supra, at 378; see also, McFarland v McFarland, 70 NY2d 916; Gaylyn v Schwartz, 56 NY2d 969; Rabbini v Rabbini, supra; Robinson v Robinson, 120 AD2d 415.)
In the instant action, the husband contends that the Tel Aviv Jaffa Rabbinical Court of the State of Israel had subject matter and personal jurisdiction over the parties herein such that this court should recognize the decree under the principle of comity. He contends that the divorce proceeding in the State of Israel was a bilateral proceeding based upon the wife’s participation in and submission to the Rabbinical Court in the State of New York. He concedes, however, that the wife was never afforded notice of the commencement of any divorce action in Israel.
The decree issued by the Rabbinical Court of the Rabbinical *707 Alliance of America on April 24, 1991, states that the husband herein "divorced his wife in accordance with Jewish Religious Law. In accordance with Jewish Religious Law he is free to remarry provided he is also civilly divorced. This certificate applies only to the above-mentioned and is not to be taken as evidence regarding the status of the wife.” The decree issued by the Tel Aviv Jaffa Rabbinical Court merely recites that the husband "who is abroad, has appeared before us, presenting us with the divorce certificate stating that [he] has divorced his wife Shahin. The divorce was arranged abroad, in America. We hereby confirm that [he] has divorced his above named wife”. The decree issued by the Tel Aviv Jaffa Rabbinical Court of the State of Israel does not set forth that the wife appeared before said court, nor does the decree incorporate by reference the terms of any separation agreement. While the parties herein did execute a purported separation agreement in the context of the proceeding conducted by the Rabbinical Court in this State, the decree resulting from that proceeding does not incorporate the agreement by reference and further specifically provides that the decree is not to be taken as evidence regarding the status of the wife.
The law is clear that judicial involvement in matters touching upon religious concerns has been constitutionally limited, and courts should not resolve controversies touching upon religious concerns in a manner requiring consideration of religious doctrine. (Avitzur v Avitzur, 58 NY2d 108, 114; Presbyterian Church v Hull Church, 393 US 440, 449; Serbian Orthodox Diocese v Milivojevich, 426 US 696, 709; Jones v Wolf, 443 US 595, 603.) Thus, the issue as to whether or not the proceedings conducted herein, in the Rabbinical Courts in this country and in the State of Israel, resulted in the religious divorce of the parties according to Jewish Law is beyond the purview of this court. This court is not, however, without jurisdiction to adjudicate the enforceability of a separation agreement executed within the context of a religious proceeding (Avitzur v Avitzur, supra, at 114; Hirsch v Hirsch, 37 NY2d 312), or to deny comity to a foreign country judgment of divorce procured by extrinsic fraud (Tamini v Tamini, 38 AD2d 197) or which violates strong public policy. (Greschler v Greschler, supra.)
Under the facts and circumstances of this case, wherein the wife has not resided in Israel since 1985, was not given notice of the commencement of any civil divorce action in the State of Israel; and did not appear in said civil action; and *708 where the foreign country judgment does not incorporate the subject separation agreement by reference, the court declines to afford comity to the decree of divorce issued by the State of Israel. The portion of the husband’s motion which seeks an order dismissing the complaint based upon the Israeli divorce decree is therefore denied.
The court must next address the husband’s contention that the wife is precluded from seeking pendente lite relief in this action on the ground that he is in substantial compliance with valid separation agreements, and the wife’s action for rescission of said agreements.
"Generally, separation agreements which are regular on their face are binding on the parties, unless and until they are put aside * * * Judicial review is to be exercised circumspectly, sparingly and with a persisting view to the encouragement of parties settling their own differences in connection with the negotiations of property settlement provisions * * * [Where] there has been an absence of inequitable conduct or other infirmity which might vitiate the execution of the agreement, the courts should not intrude so as to redesign the bargain arrived at by the parties on the ground that judicial wisdom in retrospect could view one or more of the specific provisions as improvident or one-sided” (Christian v Christian, 42 NY2d 63, 71-72; see also, Shalmoni v Shalmoni, 141 AD2d 628, lv dismissed 73 NY2d 851; Lockhart v Lockhart, 159 AD2d 283; Amestoy v Amestoy, 151 AD2d 709; Golfinopoulos v Golfinopoulos, 144 AD2d 537; Richardson v Richardson, 142 AD2d 563; Bossom v Bossom, 141 AD2d 794). The general policy is to encourage settlement and courts will enforce separation agreements which have been fairly negotiated and executed. (Martin v Martin, 74 AD2d 419.) A separation agreement will not be set aside merely because a party changes his mind (Sontag v Sontag, 114 AD2d 892), or becomes dissatisfied (Robinson v Robinson, 120 AD2d 415, supra), or claims to have misunderstood a provision of the agreement. (Howard v Howard, 120 AD2d 567.) The fact that a party is emotionally distressed at the time an agreement is negotiated and executed is no basis for overturning the agreement. (Weinstein v Weinstein, 109 AD2d 881; Zioncheck v Zioncheck, 99 AD2d 563; Matuozzi v Matuozzi, 90 AD2d 844.) Further, unsupported allegations of fraud, duress, or coercion do not form the basis for vacating an agreement where the agreement itself is not manifestly unfair. (Stoerchle v Stoerchle, 101 AD2d 831; Chasin v Chasin, 98 AD2d 788; Anderson v Ander *709 son, 90 AD2d 763; Russell v Russell, 90 AD2d 516, lv denied 58 NY2d 605.) Where both parties to the agreement are represented by counsel, there is a strong presumption that the agreement was fairly reached, and unilateral mistake of fact, lack of understanding or misunderstanding will not provide a sufficient basis to set aside a separation agreement. (Capone v Capone, 148 AD2d 565; Barry v Barry, 100 AD2d 920, affd 64 NY2d 627; Surlak v Surlak, 95 AD2d 371; Rubin v Rubin, 83 AD2d 608, appeal dismissed 55 NY2d 746, lv denied 55 NY2d 606.) Finally, full financial disclosure may be waived by a party represented by independent counsel. (Martin v Martin, supra.)
A separation agreement will not be enforced, however, where the agreement is "manifestly unfair” or unconscionable to one spouse due to overreaching by the other spouse. (Christian v Christian, supra, at 72.) An unconscionable bargain has been defined by the courts as one which " ' "no [person] in his senses and not under a delusion would make on the one hand, and * * * no honest and fair [person] would accept, on the other” ’ (* * * Hume v. United States, 132 U. S. 406 * * *), the inequality * * * 'be[ing] so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense.’ ” (Mandel v Liebman, 303 NY 88, 94.)
In the instant action, the husband’s affidavit of net worth indicates that he has income of $170,873 per year, assets worth over $700,000 and liabilities of $347,000. He purchased a home for himself in 1992 in Roslyn, New York for $400,000. The mortgage and utility expenses he reports on this home exceed $3,400 per month. The wife contests the husband’s account of his income and claims to have no information as to the extent and the value of his assets. The husband himself has not valued four leaseholds he owns in Manhattan, and has set forth no value on his personal property.
It is uncontested that the wife, herein, age 38, has never been employed, and is not fluent in the English language. The first purported separation agreement executed by the parties provided for an award to her of maintenance of $1,000 per month for a period of six years. This provision was deleted from the second purported separation agreement which apparently provided for the payment to the wife of a lump sum in lieu of maintenance of $125,000. The agreement further requires the payment of child support by the husband to the wife of $6,000 per month. The agreement makes no provision for equitable distribution of any marital assets. All marital *710 assets were owned or controlled by the husband and he retained 100% of the marital assets. The agreement makes no provision for health insurance for the wife or children, payment of uncovered medical expenses, payment for the children’s religious education and training, or life insurance to secure the children’s need for support during their infancy. The agreement makes no reference to the child support guidelines pursuant to Domestic Relations Law § 240 (1-b).
It is uncontested that the husband did not provide the wife with any financial disclosure prior to the execution of either agreement, and the wife was not represented by counsel prior to or at the time either agreement was executed. The fact that the wife was not afforded any discovery, and was not represented by counsel creates a rebuttable inference of overreaching. (Levine v Levine, 56 NY2d 42; Goodison v Goodison, 48 NY2d 786; Tuck v Tuck, 129 AD2d 792; Culp v Culp, 117 AD2d 700; Surlak v Surlak, supra; Freimour v Freimour, 78 AD2d 896.)
Based upon the respective financial circumstances of the parties at the time of the execution of the agreements, to wit: the husband being in full control of all marital assets and income and the wife having no assets or income; the fact that the husband’s counsel prepared the agreements; that the wife had no counsel and was afforded no financial disclosure, and the terms of the agreements themselves which give 100% of all marital assets to the husband, the court finds, as a matter of law, that the subject separation agreements are manifestly unfair and are the product of overreaching on the part of the husband (see, Weinstock v Weinstock, 167 AD2d 394; Peters v Peters, 150 AD2d 763; Battista v Battista, 105 AD2d 898; Mulligan v Mulligan, 98 AD2d 852).