OPINION OF THE COURT
Francesca E. Connolly, J.
The plaintiff moves pursuant to the principles of comity for an order recognizing, registering, and allowing the entry of a judgment of divorce and order of custody of the United Arab Emirates (UAE), with the same force and effect as if it were granted by a court of competent jurisdiction of the State of New York; an order pursuant to the principles of comity directing that custody of the parties’ children be immediately transferred to the plaintiff as the adjudicated custodial parent; or in the alternative, an order awarding the plaintiff immediate custody of the children. The plaintiff also seeks counsel fees in connection with the order to show cause pursuant to Domestic Relations Law §§ 236 (B) and 237 (a) (4).
The defendant cross-moves for an order denying plaintiffs motion; an order dismissing plaintiff’s summons with notice and order to show cause as barred by res judicata and collateral estoppel; an order pursuant to CPLR 3212 granting the defendant summary judgment; an order awarding the defendant physical custody of the parties’ children; an order directing the plaintiff to file an action for divorce under the New York Do *784 mestic Relations Law based upon the parties’ civil marriage in New York; and an order of counsel fees, disbursements, and expenses in connection with the prosecution of the action.
In this action, plaintiff seeks to enter, register, and enforce a judgment of divorce and order of custody rendered by the courts of Abu Dhabi where both parties appeared and fully participated in the proceedings. The issues presented are the extent to which, under the doctrine of comity, this court should recognize and enforce the foreign judgment of divorce and the provisions for child and spousal support, custody of the children, and a distributive award for $250,000 under a mahr agreement, and whether either party is entitled to counsel fees pursuant to Domestic Relations Law §§ 236 (B) and 237 (a) and (b). For the reasons set forth at length below, this court finds no compelling public policy for refusing full recognition of the Abu Dhabi judgment of divorce under the doctrine of comity and, therefore, the defendant is precluded from attacking the validity of the foreign judgment of divorce in a collateral proceeding in the New York courts. The plaintiff is entitled to an award of counsel fees on her qualifying matrimonial claims, consisting of her efforts to obtain maintenance or distribution of property following a foreign judgment of divorce (Domestic Relations Law § 237 [a] [5]), and custody and maintenance of the children (Domestic Relations Law § 237 [b]). The defendant’s request for counsel fees is denied based upon lack of merit of his application.
Procedural/Factual Background
The Parties’ Background
The parties were married on May 14, 1998 in a civil ceremony in the City, County, and State of New York. Thereafter, on July 19, 1998, the parties married in a religious ceremony under Islamic law, also in the State of New York. As part of the religious ceremony, the parties signed a mahr agreement requiring the defendant to pay the plaintiff an advanced dowry of $5,000 and, in the event of divorce, a deferred dowry of $250,000. There are two children of the marriage, a girl, born on July 12, 2001, and a boy, born on August 3, 2004. Both children were born in the United States. In 2002, the parties purchased the marital residence in Westchester County, New York.
The plaintiff, a United States citizen, graduated from Fordham University with a Bachelor’s degree in international finance. During the marriage, she worked as a senior portfolio *785 accountant at Gabelli Asset Management. The defendant graduated from Alexandria College in Egypt. He worked as a waiter in the United States until 2004 when he was granted permanent residence and became a United States citizen, at which time he worked as an architect in New York. In the fall of 2006, the defendant received an employment offer in Abu Dhabi, an emirate of the UAE, and decided to move there. The plaintiff and children remained in the United States until August 2007, when they joined the defendant in Abu Dhabi. Once there, the plaintiff obtained a job with United National Bank and entered into a three-year employment contract. The contract required her to fulfill the three-year term and give at least three months’ advance notice before leaving her employment. If the plaintiff terminated her contract early, she would be subject to financial penalties and forfeiture of benefits, including an immigration ban.
While the parties and the children were living in Abu Dhabi, the plaintiff initiated criminal proceedings against the defendant following an incident of domestic violence that occurred on January 28, 2009. The defendant was publicly prosecuted in the Abu Dhabi courts and was found guilty of assault after a trial. His conviction was affirmed on appeal to the highest court in Abu Dhabi. The plaintiff used the assault conviction as the legal basis to obtain a judgment of divorce against the defendant in the Abu Dhabi courts, along with an order awarding her custody of the children and other financial relief. She now seeks to enter and register the Abu Dhabi judgment of divorce, including its financial provisions and order of custody, in our courts with the same force and effect as if it were granted by a court of competent jurisdiction of the State of New York.
In support of her motion, plaintiff submits certified copies of the Abu Dhabi orders, judgments, and decrees, which are translated from Arabic to English by a legal translator duly licensed by the Ministry of Justice of the UAE, who attests to the correctness of the translation.[1]
She also submits an affidavit from Gabriel Sawma, an expert consultant on Islamic divorce in the United States and Middle East laws, including the legal structure of the courts of the *786 UAE, which include the emirate of Abu Dhabi.[2] Professor Sawma is fluent in Arabic and English and he reviewed both the Arabic and English translations of the certified orders, judgments, and decrees rendered by the Abu Dhabi courts in the criminal, divorce, and custody proceedings between the parties. In his affidavit, Professor Sawma explains the structure of the judiciary in the UAE, the legal proceedings between the parties, and the judgments and decrees rendered by the Abu Dhabi courts.
Plaintiff also submits an affidavit from Ezzaddin Ali Shihab Alhashemi, an attorney admitted to practice law in Abu Dhabi, who represented the plaintiff in connection with post-matrimonial issues. In his affidavit, he explains the legal proceedings in Abu Dhabi and the terms of plaintiffs employment contract with United National Bank.
The Laws and Structure of the Judiciary in the UAE and the Emirate of Abu Dhabi
The United Arab Emirates is an independent country consisting of a federation of seven semiautonomous emirates or sheikdoms. The UAE is a member of the Arab League and the United Nations. The emirate of Abu Dhabi is one of the seven members of the UAE. (See US Dept of State, Bureau of Democracy, Human Rights and Labor, Country Reports on Human Rights Practices for 2011, United Arab Emirates.)
“The UAE is a civil law country where regulations and procedures are codified in the UAE federal laws. Local and federal courts follow these procedures while hearing civil and criminal matters” (Abu Dhabi Jud Dept, Filing a Case before UAE Courts, http://www.abudhabi.ae/egovPoolPortal_WAR/ appmanager/ADeGP/Citizen?_nfpb=true&_pageLabel= P5800195121229243953993&did=302720&lang=en [accessed Aug. 31, 2012]). All emirates have Courts of First Instance and Courts of Appeal, either federal or local, in addition to the Sharia courts, which mainly deal with matters of personal status, such as marriage, divorce, and inheritance. The primary source of all legislation in the UAE is Sharia (Islamic law), based upon the Quran and the traditions of the Prophet Mohammed. (Abu Dhabi Jud Dept, Judicial System in Abu *787 Dhabi, http://www.abudhabi.ae/egovPoolPortal_WAR/ appmanager/ADeGP/Citizen?_nfpb=true&_pageLabel= P5800195121229243953993&did=297890&lang=en [accessed Aug. 31, 2012]; Federal Law No. 28 of 2005 in Matters of Personal Status art 2.)[3]
The UAE has a federal judicial system; however, the Constitution also gives each emirate the authority and power to retain its own judiciaries outside the federal system. Abu Dhabi is one of three emirates that maintains its own judiciary, or local courts. (Abu Dhabi Jud Dept, Judicial System in Abu Dhabi, http://www.abudhabi.ae/egovPoolPortal_WAR/appmanager/ ADeGP/Citizen?_nfpb=true&_pageLabel= P5800195121229243953993&did=297890&lang=en [accessed Aug. 31, 2012].)
The judiciary in Abu Dhabi was restructured under Law No. 23 of 2006, which provides for three levels of adjudication: Court of First Instance, Court of Appeal, and Court of Cassation. Each court is comprised of several judicial circuits, including personal status, civil, criminal, commercial, and administrative. (See Abu Dhabi Jud Dept, Court System in Abu Dhabi, http:// www.abudhabi.ae/egovPoolPortal_WAR/appmanager/ADeGP/ Citizen?_nfpb=true&_pageLabel=P220015251329123444033& did=298400&lang=en [accessed Aug. 31, 2012]; Federal Law No. 28 of 2005 in Matters of Personal Status.)
Personal status cases include marriage, divorce, child custody, and other family disputes. Thus, while Sharia courts may still exist in the UAE with jurisdiction over personal status matters such as divorce and custody, parties may choose to invoke the jurisdiction of the state courts, which also have jurisdiction to hear these cases (see Federal Law No. 28 of 2005 in Matters of Personal Status art 5). For personal status matters, state courts have jurisdiction where citizens or aliens have a domicile, residence, or place of business in the UAE (Federal Law No. 28 of 2005 in Matters of Personal Status arts 6, 8, 9). The provisions of the Personal Status Law apply to UAE residents who are not citizens unless one of the parties requests that the law of their home state be applied (Federal Law No. 28 of 2005 in Matters of Personal Status art 1 [2]).
The Court of First Instance has jurisdiction over civil, criminal, and personal status cases. Personal status cases involving *788 family issues are referred to the Family Orientation Committee where an effort is made to reconcile the parties amicably. (See Federal Law No. 28 of 2005 in Matters of Personal Status art 16.) If the parties fail to reach a resolution, the case is referred to a judge for trial (id.; see Abu Dhabi Jud Dept, Court System in Abu Dhabi, http://www.abudhabi.ae/egovPoolPortal_WAR/ appmanager/ADeGP/Citizen?_nfpb=true&_pageLabel= P220015251329123444033&did=298400&lang^en [accessed Aug. 31, 2012]). Criminal cases, which may only be commenced by public prosecution, are divided into criminal circuits, with misdemeanor circuits presided over by one judge (id.; see Abu Dhabi eGovernment Gateway — Citizen—Home, http ://www.abudhabi. ae [accessed Aug. 31, 2012]).
The Court of Appeal is the second level of adjudication and consists of specialized circuits: civil, criminal, personal status, commercial, labor, and administrative. Each circuit is comprised of three judges. (Id.) Any judgment of divorce may be appealed to the Court of Appeal within 30 days. The grounds for appeal can be either factual or legal and either party may request permission to introduce additional evidence or testimony of additional witnesses (see aff of Professor Gabriel Sawma, dated May 11, 2012, at 1).
The Court of Cassation is the supreme judicial body in Abu Dhabi and consists of six specialized circuits: criminal, commercial, civil, personal status, administrative, and “Judge Affairs.” Each circuit is comprised of three judges. The Court of Cassation reviews appeals challenging rulings of the appellate courts. Judgments of the Court of Cassation are generally rendered in an open hearing and are considered “final,” binding, and “irrevocable.” (See Abu Dhabi Jud Dept, Courts, http:// www.adjd.gov.ae [accessed Aug. 31, 2012].)
The Criminal Proceedings against the Defendant in the Abu Dhabi Courts
Following an incident of domestic violence that occurred on January 28, 2009, the plaintiff initiated criminal proceedings against the defendant for assault in the Abu Dhabi Court of First Instance. The defendant was prosecuted according to Islamic law and article 339/2 of the Federal Penal Code of the UAE for “violently committing] outrage upon [the plaintiff] because she [came] home late,” causing her to sustain injuries as described in a medical report that rendered her “unable to perform her personal tasks for more than 20 days.” The plaintiff alleged that she sustained severe bruises and a fractured skull *789 as a result of the defendant’s assault. The defendant was represented by counsel and fully participated in the proceedings. The defendant denied the allegations, arguing “he only pushed the [plaintiff]” and his actions were within “the limit of the male spouse’s right in discipline.”
A hearing on the criminal prosecution was held on March 4, March 18, and April 14, 2009. After considering the testimony of the plaintiff and defendant, a medical report establishing the injuries sustained by the plaintiff, and the arguments of the parties, the court found the defendant guilty of assault, a misdemeanor, and fined him 2,000 Arab Emirates Dirham (AED) as a penalty.[4] The court concluded that the facts established at the hearing refuted the defendant’s denial and confirmed the plaintiffs accusations that her bruises were “severe” and that “her husband crossed his legal limits to discipline his wife.” The court noted the defendant’s acknowledgment that the dispute occurred, causing him to “pull” the plaintiff, and that the medical report supported the plaintiffs claims and the injuries she sustained.
On April 27, 2009, the defendant appealed the decision to the Court of Appeal, which rendered a decision affirming the conviction, but amended the judgment to the limited extent of postponing execution of the sentence for three years.
The defendant also appealed the judgment to the Court of Cassation, where he continued to deny the allegations. Among his defenses, the defendant argued that he caused the plaintiffs bruises on her hands “after dragging her . . . into the bedroom so as to continue their fight away from their children.” He argued that the bruises were “simple” and insufficient to criminalize him, as it “is a man’s legal right upon his wife to discipline her, in accordance with the provisions of Article 53 of the Federal Penal Code.”
On June 30, 2009, the highest court of Abu Dhabi rejected the defendant’s arguments, finding the plaintiffs “bruises were deemed severe and the husband has crossed his legal limits to ‘discipline’ his wife.” The court found the evidence at the *790 hearing established that the defendant physically assaulted the plaintiff, causing her to sustain several injuries to different parts of her body, as proved by a medical report, and accordingly, the judgment was valid and consistent with the law, warranting punishment of the defendant under article 339/2 of the amended Federal Penal Code.
Divorce Proceedings in the Abu Dhabi Courts
On July 1, 2009, the plaintiff filed a petition for divorce in the Court of First Instance under article 117 of the Personal Status Law of the UAE, alleging that the defendant failed to provide support for the family, and physically and verbally abused the plaintiff, causing her to sustain numerous injuries, and that it had become impossible for her to live with him. The plaintiff requested that the court grant her a divorce and order the defendant to pay her the deferred dowry pursuant to the mahr agreement in the amount of $250,000, Udda (the three-month period observed by the wife before marrying someone else) alimony and children’s alimony, to provide and pay for a maid, custody of the children, possession and title to the marital residence, to provide a means of transportation for the children and to pay the previous support allowance, and other relief.[5]
Despite the findings of assault and abuse made against the defendant by three levels of courts in the criminal proceedings, including the highest court in Abu Dhabi, he continued to deny the allegations, arguing it was a malicious prosecution and lacked evidence. He also argued that the “parties were subsequently reconciled” and that the plaintiff did not “fulfill her duties as a wife towards him and used to go out of the house without his permission.” The defendant filed a counterclaim against the plaintiff seeking an order from the court directing the plaintiff “to obey him, not to go out of the house without his permission, to move with him to their Homeland America, and to pay all fees and expenses.”
*791 Hearings on the divorce were held on October 13, November 8, and December 14, 2009. Both parties were represented by counsel and fully participated in the proceedings. Although the parties had a right to request that the Abu Dhabi court apply the laws of the State of New York to their divorce proceedings under article 1 (2) of Federal Law No. 28 of 2005 in Matters of Personal Status, at no time did either party make the request. On December 27, 2009, in the presence of both parties, the court issued a ruling on the merits rejecting the defendant’s counterclaim and finding in favor of the plaintiff. The court granted the plaintiff a divorce from the defendant on the ground of “harm and damage,” and issued a ruling declaring the Udda alimony to be valid; directing the defendant to pay the plaintiff the Udda alimony in the amount of 30,000 AED, payable upon the effective date of the divorce judgment; directing the defendant to pay the plaintiff the deferred dowry of $250,000; directing the defendant to provide appropriate housing for the plaintiff, as the children’s caregiver, or a housing allowance of 9,000 AED per month; directing the defendant to pay alimony for the children in the amount of 14,000 AED per month for each child, including food, clothing and transportation allowances, retroactive to January 7, 2009; directing the defendant to pay the plaintiff alimony in the amount of 10,000 AED per month retroactive to January 7, 2009 and payable until the effective date of the judgment of divorce; and directing the defendant to provide the plaintiff and children with a maid or 700 AED per month, which was the salary of a maid as of January 7, 2009. The court also awarded the plaintiff custody of the children and directed the defendant to pay all relevant fees and expenses.
The decision of the lower court was appealed to the Court of Appeal, which rendered a decision on April 4, 2010, and the Court of Cassation, which rendered a decision on November 8, 2010. Both courts affirmed the judgment, except that the Udda alimony was reduced from 30,000 AED to 15,000 AED to allow for the accommodation allowance only, since it was revealed that the defendant had already divorced the plaintiff and she was not pregnant.
Post-Divorce Custody Proceedings in the Abu Dhabi Courts
Following the final conclusion of the divorce proceedings, the defendant left the UAE and returned to the United States. Plaintiff claims the defendant left her and the children in the UAE without notice and fled to the United States, taking the *792 children’s passports with him, with the intention of avoiding enforcement of the judgment of divorce. Plaintiff claims the defendant’s actions placed the children’s residency in jeopardy, as their residency was sponsored through the defendant’s employment and was to be cancelled. Without the passports, the children’s residency could not be sponsored through the plaintiff’s employment. In addition, the defendant failed to provide child support and alimony, and failed to comply with the Abu Dhabi judgment of divorce, causing the plaintiff to accumulate significant debt and suffer financial hardship. The plaintiff alleges that as a result of the defendant’s failure to pay support, the children faced the risk of being asked to leave their school, forcing her to pay the tuition. She also claims she faced eviction proceedings in Abu Dhabi and was forced to take a hardship distribution from her 401(k) and sell most of her jewelry.
The defendant claims the reason he returned to the United States was to deal with a foreclosure action commenced against the marital residence in Westchester County, New York. The defendant admits he stopped paying the mortgage and home equity loan on the marital residence in 2009 after the plaintiff commenced the divorce proceedings in Abu Dhabi. He claims that once he returned to the United States, he decided to remain in New York since his employment in Abu Dhabi terminated as of December 15, 2010. He claims the plaintiff had a travel ban issued preventing the children from leaving the UAE. The defendant also claims he paid the plaintiff $5,900 per month for housing, child support and tuition from July 2009 through September 2010, at which time he concedes he stopped paying support for the family. Although he claims he paid for the family’s housing expenses through May 14, 2011 while they were living in the UAE, the plaintiff disputes this claim.
While the defendant remained in the United States and his family resided in the UAE, the defendant initiated proceedings in the Court of First Instance to obtain custody of the children. Both parties appeared through counsel at a hearing held on March 27, 2011. The defendant argued that, as the father, he holds the primary right of custody of the children under article 152 of the Personal Status Law and since he was living in the United States and would not be able to perform his paternity duties from afar, he should be awarded custody. The court noted that under paragraph (2) of article 152 of the Personal Status Law, if a father leaves the country, he has the right to take his *793 children with him provided he asks the mother to travel with the children and live with them. If the mother refuses to travel with the father, she will lose her right to custody. After considering the facts of the case and the arguments of the parties, the Court of First Instance dismissed the defendant’s case and ordered him to pay all expenses in connection with the case. The court found that by taking the children’s passports out of the country and failing to buy flight tickets for the children and the mother, the defendant failed to establish compliance with the law giving him the right to custody. The court rejected the defendant’s claim that the plaintiff refused to travel with him to the United States.
Once again, the defendant appealed the decision to the Court of Appeal, which affirmed the decision denying the defendant’s application for a change in custody.
Proceedings in the New York Courts
While the plaintiff remained in Abu Dhabi, she retained counsel in New York to pursue recognition and enforcement of the Abu Dhabi judgment of divorce in New York. She commenced a declaratory judgment action in January 2011, in Bronx County, New York. These proceedings were transferred to Westchester County based upon the defendant’s residence in the marital home located there. During this time, the plaintiff also sought to obtain temporary passports for the children, as she intended to return to the United States with the children so they could register and attend school in September of 2011. However, since her employment contract in Abu Dhabi had not yet expired, she intended to return there temporarily to avoid any adverse long-term consequences that would result if she breached her contract, and to allow her to recoup funds in Abu Dhabi for the children’s support and to pay off debts accumulated as the result of the defendant’s failure to provide court-ordered support. She also intended for the children to temporarily reside with her parents in the United States until she returned.
After six months, the United States Embassy finally issued temporary passports enabling the plaintiff and the children to return to the United States on June 3, 2011. According to the plaintiff, the temporary passports were issued on the condition that the children leave the UAE within two weeks. Upon their arrival in New York, the defendant immediately served the plaintiff with an order to show cause seeking custody of the children, along with an ex parte order restraining the children *794 from leaving the court’s jurisdiction and directing the defendant’s attorney to hold the children’s passports in escrow.
The matter was initially assigned to the postjudgment matrimonial part, where the Honorable Robert A. Neary, A.J.S.C., appointed an attorney for the children. Since the plaintiff was returning to Abu Dhabi on a temporary basis to complete her employment contract, the parties entered into an interim custody arrangement, which was placed on the record in open court on June 7, 2011, whereby the defendant would have temporary physical custody of the children until the plaintiff returned, at which time custody would revert to the plaintiff and she would have the right to live in the marital residence with the children. The parties also agreed that the maternal grandparents would have visitation with the children while the plaintiff was away. The defendant’s attorney acknowledged in open court that this arrangement was fair and would benefit the children. The temporary custodial arrangement was reduced to an order and signed by Judge Neary on June 15, 2011. The written order differed from the agreement placed on the record in that it added that the defendant would have temporary “legal” and physical custody of the children.
While in Abu Dhabi, the plaintiff was able to recover 313,714.60 AED, or about $87,000, from defendant’s former employer as his end-of-employment gratuity. The plaintiff alleges that the defendant has failed to pay the balance of the Udda alimony and child support, housing costs, maid expenses, and the $250,000 lump-sum payment as the deferred dowry under the mahr agreement.
The defendant admits that he defaulted on the mortgage for the marital residence in 2009 when the plaintiff filed for divorce. He claims he was unemployed until February 2012, when he obtained employment with an unspecified private company at a New York airport. The defendant claims he paid the plaintiff $5,900 per month for housing, child support and tuition from July 2009 through September 2010, at which time he concedes he stopped paying support for his family. The defendant submits an alleged accounting report dated October 10, 2010, showing he paid 120,000 AED ($33,600) towards his foreign court-ordered support obligations. He also submits copies of an alleged rental receipt for rent payments between March 31, 2010 and May 14, 2011, totaling 145,000 AED ($41,600), along with copies of three checks documenting these payments. The defend *795 ant also points out that the plaintiff received his end-of-employment gratuity in the sum of 313,714 AED ($85,000).[6]
The plaintiff concedes that the defendant paid support under the divorce judgment for some period — until he left the country in September 2010. However, she does not identify what items of support were paid until that time, nor does she set forth the specific amounts paid. She acknowledges receiving the defendant’s end-of-employment gratuity in the approximate amount of $87,000, [7] but it is unclear the extent to which this satisfied support arrears. Plaintiff alleges that one of the rent checks issued by the defendant for 60,000 AED was returned for insufficient funds. She also submits an email from the defendant to her dated December 11, 2010, indicating he had not paid the rent. She claims she paid the rent herself by taking a hardship distribution from her 401(k) plan and selling her jewelry, and submits copies of her checks showing rent payments for the time period the defendant alleges he covered.
Plaintiff returned briefly to the United States in October of 2011 to spend time with the children, but returned to the UAE to complete her employment contract and wind down her affairs. A court conference was held before Judge Neary on October 4, 2011, whereby the parties agreed to withdraw all outstanding motions without prejudice and that the temporary order of custody would remain in effect.
When the plaintiff returned to New York permanently, the defendant refused to abide by the court order and return the children to her. The plaintiff filed the instant order to show cause, initially made returnable on February 1, 2012, seeking an order, under the principles of comity, recognizing, registering, and allowing entry of the Abu Dhabi judgment of divorce and order of custody, an order awarding the plaintiff immediate custody of the parties’ children as the adjudicated custodial parent pursuant to the principles of comity and Domestic Relations Law § 237, and an award of counsel fees pursuant to Domestic Relations Law §§ 236 (B) and 237 (a) (4) in connection with the order to show cause. Since a judgment of divorce had not been entered in New York, the matter was transferred out of the postjudgment matrimonial part to this court. On February 3, 2012, the parties appeared before this court for an emergency hearing on the custody issues raised in plaintiffs motion. On *796 that date, the parties entered into a temporary custody and access agreement pending the decision on plaintiff’s motion. Specifically, the parties agreed to temporary joint custody with each party having exclusive use and occupancy of the marital residence in Pleasantville, New York during their respective parental access periods.
While the plaintiffs motion was pending, the defendant filed a cross motion on April 23, 2012 seeking physical custody of the parties’ children. The defendant claims that during the time he had temporary custody of the children following their return to New York in June 2011, they advised him of incidents that occurred during their residence with the plaintiff in Abu Dhabi that caused him to question plaintiffs ability to share physical custody of the children. The defendant claims the children told him that the plaintiff would leave them unattended until 2:00 a.m. or overnight with a maid who could not communicate with them in either Arabic or English; allow the son, then age six, to walk to a grocery store across a busy street by himself; allow the children to share a hotel room with her and her boyfriend, with the plaintiff sleeping in one bed with the children, and the boyfriend sleeping in another bed; and fail to properly bathe or feed the children. He also alleges that the plaintiff failed to have clear communication with one child’s school regarding his placement for the following school year. The defendant submits a copy of an email he sent to the Attorney for the Children dated December 16, 2011 outlining these allegations against the plaintiff.
Plaintiff relies on the permanent order of the Abu Dhabi courts awarding her custody of the children and their findings that the defendant abandoned the plaintiff and the children in the UAE while he fled to the United States without providing them with any financial or emotional support for nearly a year, and that the defendant physically abused the plaintiff so severely that the court found it exceeded any reasonable discipline. She also alleges that the defendant’s recent actions show that the plaintiff should be awarded custody of the children. She alleges that the defendant has made efforts to limit and curtail her communication and access to the children, and that she had to rely on the Attorney for the Children to intervene. She also alleges that the defendant has failed to provide proper medical care for the children, ascribing an unidentified rash on their son’s upper leg and a substantial cut on his forearm he sustained from glass that broke while he was banging on a *797 window, and that the defendant has blocked her efforts to receive information from the children’s pediatrician about their health care. She also alleges that the defendant engages in corporeal punishment of the children and that they are unhappy and fearful of him. She also alleges that the house has mold, is unsanitary, and is in a state of disarray, that the children are not given proper clothing or nutrition, and the dog is allowed to relieve himself in the home.
The defendant claims that the parties are deemed married under the laws of New York, as the Abu Dhabi courts entered a divorce judgment based on the religious marriage, applying the laws of the Islamic Sharia, and no divorce action has been filed based upon the civil marriage. He claims that the Abu Dhabi divorce was a religious judgment of divorce, not a civil judgment of divorce, and therefore, the New York courts should not afford it comity. The defendant also claims the plaintiff is barred by res judicata and collateral estoppel from seeking any relief related to the religious marriage, as these issues were litigated in Abu Dhabi.
Discussion/Analysis
Recognition of the Abu Dhabi Judgment of Divorce under the Doctrine of Comity
“The general principle of law is that a divorce decree obtained in a foreign jurisdiction by residents of this State, in accordance with the laws thereof, is entitled to recognition under the principle of comity unless the decree offends the public policy of the State of New York” (Matter of Kraham v Kraham, 73 Misc 2d 977, 977 [Sup Ct, Nassau County 1973]). “Although not required to do so, the courts of this State generally will accord recognition to the judgments rendered in a foreign country under the doctrine of comity which is the equivalent of full faith and credit given by the courts to judgments of our sister States” (Greschler v Greschler, 51 NY2d 368, 376 [1980]). “Loosely, [comity] means courtesy, respect, or mutual accommodation; practically, it means that each sovereign, including the State of New York, can decide for itself which foreign country judgments it will recognize and which it won’t” (Siegel, NY Prac § 472 [5th ed]).
A court has the inherent power pursuant to the principles of comity to recognize and enforce a foreign judgment of divorce “unless there is some defect of jurisdiction shown to be against the public policy of the domestic state” (48A NY Jur 2d, Domestic Relations § 2809).
*798 “[A] party who has properly appeared in a foreign action is ordinarily precluded from attacking the resulting judgment by bringing a collateral New York proceeding. . . . Only where there has been a showing that the foreign judgment was fraudulently obtained ... or that recognition of the judgment would conflict seriously with a compelling public policy . . . can a collateral attack be entertained” (Robinson v Robinson, 120 AD2d 415, 415-416 [1st Dept 1986]).
“Absent some showing of fraud in the procurement of the foreign country judgment ... or that recognition of the judgment would do violence to some strong public policy of this State ... a party who properly appeared in the action is precluded from attacking the validity of the foreign country judgment in a collateral proceeding brought in the courts of this State” (Greschler v Greschler, 51 NY2d at 376).
“Since New York recognizes bilateral divorce decrees from foreign countries, recognition will be given to all the contents of such a decree, including a separation agreement ‘incorporated’ and ‘approved’ therein. .. .
“No specific language is necessary to create an incorporation by reference. The court must look to the entire judgment of divorce and the surrounding circumstances” (48A NY Jur 2d Domestic Relations § 2844).
“A separation agreement incorporated in a valid foreign divorce judgment is also immune from challenge under the doctrine of comity, because such a challenge would essentially constitute an impermissible collateral attack on the foreign judgment” (Tal v Tal, 158 Misc 2d 703, 706 [Sup Ct, Nassau County 1993], citing Greschler v Greschler, 51 NY2d at 378).
Both parties were residing in Abu Dhabi when the plaintiff instituted the divorce proceedings. The divorce decree was obtained after a trial and two appeals, including an appeal to the highest court in Abu Dhabi, the Court of Cassation, that rendered a final and binding judgment of divorce. Both parties were represented by counsel, participated in the divorce proceedings, and had a full opportunity to contest jurisdiction and all other issues. There is no question that the foreign court had jurisdiction over the parties at the time the divorce judgment was *799 issued and that it was a final binding order, thereby precluding the defendant from now collaterally attacking its validity or re-litigating any of its provisions (see Borenstein v Borenstein, 151 Misc 160 [Sup Ct, NY County 1934]; Greschler v Greschler, 51 NY2d at 376).
In considering whether the public policy of the State of New York would be violated, courts should consider the validity of the foreign court’s jurisdiction over the parties and the similarity of the grounds for divorce with those which would be permitted in New York, and if not, whether the grounds would be repugnant to the public policy of this state (see Matter of Kraham v Kraham, 73 Misc 2d 977, 981 [Sup Ct, Nassau County 1973]). The plaintiff filed for divorce pursuant to article 117 of the Personal Status Law of the UAE on the grounds of “harm and damage,” which had previously been proved in the criminal case against the defendant based upon assault. These grounds are similar to those which would be permitted under Domestic Relations Law § 170 (1), cruel and inhuman treatment, and are, therefore, not repugnant to the public policy of the State of New York.
The defendant claims that the Abu Dhabi Court entered a divorce judgment based upon the religious marriage and declined to recognize and litigate the civil marriage, thereby violating the public policy of this state. However, this claim is belied by the multiple orders, judgments, and decrees annexed to plaintiffs moving papers, which establish that the divorce action was brought in the Abu Dhabi civil court system and under the Personal Status Law of 2005. Moreover, article 5 of the Personal Status Law establishes that the divorce action was litigated in a civilian state court, not a Sharia religious court, by stating: “[t]he State courts shall have jurisdiction on Personal Status litigations in which citizens, or Miens, having domicile or residence or place of business in the State, are defendant.” (See also aff of Professor Gabriel Sawma, dated May 11, 2012, at 3, and the exhibits annexed thereto.)
The defendant Mso suggests that this court should find that the Abu Dhabi judgment of divorce violates the public policy of the State of New York by virtue of the fact that the laws of the UAE are based upon Sharia law. Although the Sharia may serve as the primary source for the laws of the UAE, the plMntiff is entitled to more than a visceral review of the judgment of divorce by this court to determine if any of its provisions violate our domestic public policy. While parts of Sharia law governing *800 personal status would indeed violate our domestic policy, such as laws allowing husbands to practice polygyny and use of physical force to discipline their wives, or laws prohibiting Muslim women from marrying non-Muslims,[8] the Abu Dhabi judgment of divorce does not regulate the parties’ conduct, but determines the financial issues between the parties, which include spousal and child support, and a distributive award based upon the mahr agreement, and child custody. None of the principles used by the Abu Dhabi courts in the parties’ divorce action may be considered violative of our public policy.
The defendant’s reference to the Hague Convention as a basis for this court to deny comity to the Abu Dhabi judgment of divorce is without merit. The fact that the UAE is not a party or signatory to the Hague Convention has no bearing on the issue of comity presented in this case. “The Hague Convention is a treaty that provides mechanisms by which plaintiffs can effect service of process on defendants in foreign countries” (Beverly L. Jacklin, Service of Process by Mail in International Civil Action as Permissible under Hague Convention, 112 ALR Fed 241). This action does not implicate the Hague Convention, as it involves a foreign divorce in the UAE where both parties resided at the time of the divorce proceedings, and there was no issue of service of process. The parties now live in New York, and all of the pleadings and papers in the present action were served here with no issue being raised over service of process. Since there is no issue of service of process on a defendant in a foreign country, the Hague Convention does not apply (see Azim v Saidazimova, 280 AD2d 566, 567 [2d Dept 2001]).
The defendant’s claim that the plaintiff moved to Abu Dhabi to obtain a foreign divorce and evade the laws of New York is nothing more than a conclusory allegation not borne out by the facts. The plaintiff moved to Abu Dhabi with the children to live with the defendant as a family. After moving there, she obtained employment with United National Bank and signed a three-year employment contract evidencing her intent to reside in Abu Dhabi with the family. It was not until her husband physically assaulted and abused her that she availed herself of the Abu Dhabi courts, which was nearly two years after she moved there.
Based upon the foregoing, this court finds that the foreign court had jurisdiction over the parties at the time the divorce *801 was granted and judgment was entered, and that recognition of the foreign judgment would present no serious conflict with a compelling public policy of this state. The civil divorce judgment was appealed to the Court of Cassation, which is the highest court of Abu Dhabi, making the judgment final and binding on the parties, immune from collateral attack. Accordingly, the civil decree of the Abu Dhabi courts granting the parties a divorce is entitled to recognition, registration, and entry in New York based on the principles of comity.
Recognition of the Mahr Agreement in the Abu Dhabi Judgment of Divorce
Plaintiff also seeks an order recognizing, registering, and allowing entry of the Abu Dhabi judgment against the defendant for $250,000 pursuant to the mahr agreement. The mahr agreement was executed as part of a religious ceremony two months after the parties’ civil marriage on July 19, 1998. The plaintiff submits that this court should recognize the foreign court’s judgment declaring the mahr agreement valid and enforceable against the defendant, and allow entry of the judgment under article 53 of the CPLR, since the Abu Dhabi court had jurisdiction over the parties, the judgment was rendered under a system compatible with the requirements of due process of law, neutral principles of law may be applied to the mahr agreement without reference to any Islamic religious principles, and the agreement does not violate any public policy. The defendant challenges the validity of the mahr agreement, asserting there was no consideration given for his promise to pay $250,000 in the event the parties divorced. He also argues that recognition of the mahr, a religious document, would violate the constitutional separation between church and state.
In seeking recognition, entry, and enforcement of the Abu Dhabi judgment in the amount of $250,000 pursuant to the mahr agreement, the plaintiff is not seeking any new relief against the defendant, but rather, she is asking this court to perform the ministerial function of recognizing the foreign country’s judgment and converting it into a New York judgment (see CIBC Mellon Trust Co. v Mora Hotel Corp., 100 NY2d 215 [2003]).
“ ‘New York has traditionally been a generous forum in which to enforce judgments for money damages rendered by foreign courts,’ and, in accordance with that tradition, the State adopted the Uniform Foreign Country Money-Judgments Recognition Act *802 as CPLR article 53 ... . Article 53 ‘applies to any foreign country judgment which is final, conclusive and enforceable where rendered’ . . . and ‘a foreign country judgment is considered “conclusive between the parties to the extent that it grants or denies recovery of a sum of money” ’ ” (John Galliano, S.A. v Stallion, Inc., 15 NY3d 75, 79-80 [2010], quoting CIBC Mellon Trust Co. v Mora Hotel Corp., 100 NY2d at 221; CPLR 5302, 5303).
Unless a ground for nonrecognition exists under CPLR 5304, a foreign money judgment is to be recognized under the doctrine of comity.
“[T]he inquiry turns on whether exercise of jurisdiction by the foreign court comports with New York’s concept of personal jurisdiction, and if so, whether that foreign jurisdiction shares our notions of procedure and due process of law. If the above criteria are met, and enforcement of the foreign judgment is not otherwise repugnant to our notion of fairness, the foreign judgment should be enforced in New York under well-settled comity principles without microscopic analysis of the underlying proceeding” (Sung Hwan Co., Ltd. v Rite Aid Corp., 7 NY3d 78, 83 [2006]).
Moreover, it is not required that the “foreign tribunal’s procedures exactly match those of New York. Rather, [CPLR 5304 (a) (1)] is satisfied if the foreign court’s procedures are ‘compatible with the requirements of due process of law’ ” (CIBC Mellon Trust Co. v Mora Hotel Corp., 100 NY2d 215, 222 [2003]).
The parties signed the mahr agreement as part of a religious ceremony two months after they were married in a civil ceremony. The agreement required the defendant to pay the plaintiff an advanced dowry of $5,000 and, in the event of divorce, a deferred dowry of $250,000. The mahr agreement entered into by the parties after their civil marriage ceremony is considered a postmarital contract, or antenuptial agreement (see generally Ahmed v Ahmed, 261 SW3d 190 [Tex Ct App 2008]). “There can be little doubt that a duly executed antenuptial agreement, by which the parties agree in advance of the marriage to the resolution of disputes that may arise after its termination, is valid and enforceable” (Avitzur v Avitzur, 58 NY2d 108, 114 [1983]).
So too may agreements predicated upon religious doctrine and customs be enforced in civil courts, as long as enforcement
*803 does not violate either the law or the public policy of the state. (Id.) While “the First Amendment severely circumscribes the role that civil courts may play in resolving [religious] disputes,” a state may adopt any approach to settling these disputes, “so long as it involves no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith” (Jones v Wolf, 443 US 595, 602 [1979]; Avitzur v Avitzur, 58 NY2d at 114). Use of the “neutral principles of law” approach, which “contemplates the application of objective, well-established principles of secular law to the dispute,” has been found to be “consistent with constitutional limitations.” This approach permits “judicial involvement to the extent that it can be accomplished in purely secular terms.” (Id. at 114-115.)
The “neutral-principles” method requires a civil court to “take special care to scrutinize the [religious] document in purely secular terms, and not to rely on religious precepts” (Jones v Wolf, 443 US at 604). If interpretation of the document “require [s] the civil court to resolve a religious controversy, . . . resolution of the doctrinal issue” must be deferred to the “authoritative ecclesiastical body.” (Id.)
A “Mahr Agreement is not void simply because it was entered into during an Islamic ceremony of marriage. Rather, enforcement of the secular parts of a written agreement is consistent with the constitutional mandate for a ‘free exercise’ of religious beliefs, no matter how diverse they may be” (see Odatalla v Odatalla, 355 NJ Super 305, 311, 810 A2d 93, 96-97 [2002]). Since a mahr agreement may be enforced according to neutral principles of law, it will survive any constitutional challenge and be enforceable as a contractual obligation (see id.; Aziz v Aziz, 127 Misc 2d 1013, 1014 [Sup Ct, Queens County 1985]; see also Akileh v Elchahal, 666 So 2d 246, 248-249 [Fla Dist Ct App 1996]).
Even though the law applied by the Abu Dhabi courts in finding the agreement valid and enforceable may be more expansive than the laws of New York, this court is not precluded from recognizing and entering the judgment under the doctrine of comity. Under New York law, to enforce the mahr agreement as an antenuptial agreement it was required to be subscribed by the parties and acknowledged or proved in the same manner required to record a deed (Domestic Relations Law § 236 [B] [3]; 45 NY Jur 2d, Domestic Relations § 166). Articles 1 (1) and 1 (2) of the Personal Status Law of the UAE gave the defendant the opportunity to request that the Abu Dhabi court apply the *804 laws of the State of New York, but he chose not to do so. Although the mahr agreement is not acknowledged in accordance with New York law, this issue was never raised in the Abu Dhabi courts. Nor does the defendant raise this issue here before this court.
In applying its own substantive law, the Abu Dhabi court examined the mahr agreement submitted by the plaintiff, heard the defendant’s claims, and found the mahr agreement valid and enforceable. Specifically, the court upheld the agreement based on the fact that the plaintiff was entitled to the deferred dower, it bore the witnesses’ signatures as well as the date and place of the contract. The court rejected defendant’s arguments that under article 49 of the Personal Status Law and Federal Law No. 21 for 1997, the dowry amount should be limited to the minimum amount of $50,000. The court found that the law limiting the amount of an allowable deferred dower to $50,000 only applied to UAE nationals and, since the parties were both United States citizens and the marriage contract was made outside the UAE, the law did not apply to them. Accordingly, the Abu Dhabi court ordered the defendant to pay the plaintiff the full amount of the agreed upon deferred dower in the amount of $250,000. This decision was affirmed by the Court of Appeal and the Court of Cassation, making it a final irrevocable order, binding on the parties.
No strong public policy would be violated by the recognition, entry, or enforcement of the foreign judgment upholding the mahr agreement. The defendant never raised the issue of acknowledgment in the Abu Dhabi courts, nor has he raised it here in these motions. Nevertheless, the public policy behind New York’s inflexible requirement that a postmarital contract be acknowledged is to prevent fraud and have “consistent and predictable enforcement . . . with regard to such important marital agreements” (Matisoff v Dobi, 90 NY2d 127, 136 [1997]). This public policy, though important, cannot be said to be so deeply rooted and compelling that it must displace the foreign court’s application of a more flexible analysis. “The public policy inquiry rarely results in refusal to enforce a judgment unless it is Inherently vicious, wicked or immoral, and shocking to the prevailing moral sense’ ” (Sung Hwan Co., Ltd. v Rite Aid Corp., 7 NY3d 78, 82 [2006]). These public policy exceptions are reserved “for those foreign laws that are truly obnoxious” (Welsbach Elec. Corp. v MasTec N. Am., Inc., 7 NY3d 624, 629 [2006]).
Here, there has been no showing that the laws applied by the Abu Dhabi courts violated “some fundamental principle of *805 justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal” (id.). Since the law applied by the foreign court does not entail any such violation, the judgment should not be displaced by New York law. Moreover, if this court were to supplant New York substantive law in place of the foreign jurisdiction, this “would undermine the fundamental principles of comity” (see Sung Hwan Co., Ltd. v Rite Aid Corp., 7 NY3d at 84-85).
Here, the issue of the mahr agreement was fully litigated at trial as well as on appeal to the highest court in Abu Dhabi. Both parties appeared, were represented by counsel, and fully participated in all proceedings. The defendant has not established or raised any facts to suggest that the mahr agreement was procured through fraud. Nor has he demonstrated that enforcement of the judgment derived from the mahr agreement would be repugnant to the public policy of this state or our notions of fairness. Considering the relevant provisions of the Constitution, Personal Status Law, and procedural rules of the UAE, along with the court decisions in the civil divorce and criminal cases, this court concludes that the Abu Dhabi courts had jurisdiction over the parties and the judgment was rendered under a system of justice compatible with due process of law. The defendant’s challenge to the foreign judgment is nothing more than a forbidden collateral attack. Based upon the foregoing, the foreign judgment against the defendant in the amount of $250,000 shall be recognized and entered as a New York judgment pursuant to CPLR 5301 et seq.
Recognition and Enforcement of the Spousal and Child Support Provisions of the Abu Dhabi Judgment of Divorce
In her motion, plaintiff seeks a declaratory judgment recognizing each provision of the divorce judgment, including those provisions covering spousal and child support. The Abu Dhabi judgment of divorce directed the defendant: to pay to the plaintiff Udda alimony in the amount of 30,000 AED payable upon the effective date of the divorce judgment, alimony for the children in the amount of 14,000 AED per month for each child, including food, clothing, and transportation allowances, retroactive to January 7, 2009, and alimony for the plaintiff in the amount of 10,000 AED per month retroactive to January 7, 2009 and payable until the effective date of the judgment of divorce; to provide the plaintiff and the children a maid or 700 AED per month, which was the salary of a maid as of January 7, 2009; to provide appropriate housing for the plaintiff in Abu Dhabi or a *806 housing allowance of 9,000 AED per month; and. to pay all relevant fees and expenses in connection with the litigation. On appeal, the judgment was affirmed by the highest court in Abu Dhabi, except for the Udda alimony, which was reduced from 30,000 AED to 15,000 AED.
The defendant argues that article 53 of the CPLR specifically excludes foreign court support judgments in matrimonial matters from recognition and enforcement and, therefore, the plaintiff is estopped from seeking support arrears based upon the foreign judgment of divorce. This argument is inapposite. First, the plaintiff does not rely upon article 53 of the CPLR as the procedural tool for this court to recognize the support portions of the foreign divorce decree. Second, the mere fact that foreign court judgments for support are excluded from recognition and enforcement under article 53 does not prevent this court “from recognizing the judgment as a simple matter of comity ... as long as the various features of the foreign proceedings are shown to satisfy basic concepts of due process analogous to our own.” (140 Siegel’s Practice Review 4, Inapplicability of CPLR Article 53 to Foreign Country Support Judgment Doesn’t Bar Recognition as Simple Matter of Comity [Oct. 2003]; see also Downs v Yuen, 298 AD2d 177 [1st Dept 2002]; Mandel-Mantello v Treves, 79 AD2d 569 [1st Dept 1980].) The exclusion of foreign court support judgments in matrimonial or family matters from article 53 of the CPLR “ ‘is not designed to preclude recognition, but to acknowledge their unique status and treatment and leave them to existing law, which is . . . quite generous in New York’ ” (Downs v Yuen, 298 AD2d 177, 177 [2002], citing Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C530L2 at 541).
In this case, the foreign court’s proceedings and procedural rules are compatible with the requirements of due process of law and our notions of fairness. The foreign court had jurisdiction over the parties and the support provisions of the divorce decree present no issues of fraud or violation of public policy. Accordingly, the support provisions of the foreign judgment of divorce will be recognized under the principles of comity and the plaintiff may convert the Abu Dhabi support judgment into a New York judgment (see generally Mittenthal v Mittenthal, 99 Misc 2d 778, 781 [Sup Ct, NY County 1979]). Once entered as a domestic support judgment, a New York court could entertain an application for enforcement or modification under Domestic Relations Law § 244 and Family Court Act §§461 (b) and 466 (c). (Id.)
*807 To the extent the plaintiff’s motion seeks a judgment against the defendant for support arrears under the Abu Dhabi judgment of divorce, this application is denied with leave to renew. Although this court has concurrent jurisdiction with the Family Court to entertain applications to enforce foreign decrees for spousal and child support before they are reduced to a domestic judgment, the record on the motions presented here is insufficient for this court to grant such relief, even in the form of a money judgment.
“A decree of divorce by a foreign country court . . . is enforceable in New York on the principle of comity, and should be given the same degree of enforceability with respect to entering a judgment for support arrears as would be given to a similar application based on a judgment of a New York court, subject to the discretion of the court, and inasmuch as there is a judgment stating the full amount of arrears,” (18A Carmody-Wait 2d § 114:399; see Matter of M.H. v M.G., 172 Misc 2d 526, 530 [Fam Ct, Albany County 1996]) or sufficient proof to establish that the accrued support arrears are vested and “incapable of being modified by the rendering country” (Mandel-Mantello v Treves, 79 AD2d 569, 569 [1980]; see also Oka v Oka, 92 Misc 2d 1080 [App Term, 2d Dept 1977]; Tannenberg v Beldock, 68 AD2d 307, 313 [1st Dept 1979]).
“[I]f the rendering court has the power to modify its decree with retroactive effect, and thus reduce the amount of unpaid arrears or extinguish them entirely, an action will not lie in this state to recover the arrears unless and until the amount thereof has first been definitely fixed by the rendering court” (48A NY Jur 2d, Domestic Relations § 2735).
Here, the Abu Dhabi support order does not represent a final determination of a fixed amount of money then found to be due but, rather, consists of a directive to the defendant for the payment of specific sums to the plaintiff for support (see Mittenthal v Mittenthal, 99 Misc 2d at 781). There is no proof in the record to establish the precise amount of accrued support arrears or that the accrued support arrears are vested and not subject to modification under the laws of the UAE (see Tannenberg v Beldock, 68 AD2d at 313).
The initial divorce judgment was clear in its support directives. Since that time the defendant has made some support *808 payments; however, the motion papers are insufficient insofar as they do not establish the actual amount of support arrears owed by the defendant. The defendant alleges he paid the plaintiff $5,900 per month for housing, child support, and tuition for the months of July, 2009 through September 2010. He submits an alleged accounting report dated October 10, 2010, showing he paid 120,000 AED ($33,600) towards his foreign court-ordered support obligations up to that date. He also submits copies of an alleged rental receipt for rent payments between March 31, 2010 and May 14, 2011, totaling 145,000 AED ($41,600), along with copies of three checks showing payments totaling this amount. The defendant also points out that the plaintiff received his end-of-employment gratuity in the sum of 313,714 AED ($85,000).[9]
The plaintiff concedes that the defendant paid support under the divorce judgment for some period — until he left the country in September 2010. However, she does not identify what items of support were paid until that time, nor does she set forth the specific amounts paid. She acknowledges receiving the defendant’s end-of-employment gratuity in the approximate amount of $87,000,[10] but it is unclear the extent to which this satisfied support arrears. Plaintiff alleges that one of the rent checks issued by the defendant for 60,000 AED was returned for insufficient funds. She also submits an email from the defendant to her dated December 11, 2010, indicating he had not paid the rent. She claims she paid the rent herself by taking a hardship distribution from her 401(k) plan and selling her jewelry, and submits copies of her checks showing rent payments for the time period the defendant alleges he covered.
Clearly the defendant has paid some sums to the plaintiff against the support order for which he should receive a credit against his arrears. Although it appears the defendant is not current on his support obligations and arrears have accrued, the plaintiffs papers are deficient in that they fail to establish the precise amount owed by the defendant. Also, the plaintiffs proof is deficient on the second prong of her burden of proof in establishing the finality of the support arrears under the laws of the UAE. Adthough the plaintiff has provided affidavits from legal experts who provide opinions on the substantive and *809 procedural laws of the UAE in matrimonial matters, these experts do not address the issue of whether accrued support arrears are modifiable retroactively under the laws of the UAE. Therefore, in the absence of such proof, this court is without the authority to enter a judgment for accrued support arrears under the foreign decree before it is reduced to a domestic judgment.
Recognition and Modification of the Custody Orders from the Abu Dhabi Courts
The Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) applies nationally and internationally and is designed to promote uniformity throughout the world in custody determinations (see Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law art 5-A). The UCCJEA is mandatory and provides that “a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this article must be recognized and enforced,” except where “the child custody law of a foreign country as written or as applied violates fundamental principles of human rights” (Domestic Relations Law § 75-d [2], [3]).
This statute mandates that any foreign nation must be treated as if it were a state within the United States for purposes of jurisdiction and inter-court cooperative mechanisms. The UCCJEA is not a reciprocal act. There is no requirement that the foreign country enact a UCCJEA equivalent. (See Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law art 5-A.) The statute “is designed to eliminate jurisdictional competition between courts in matters of child custody!, with] Q]urisdictional priority . . . conferred to a child’s ‘home state’ ” (Hector G. v Josefina P., 2 Misc 3d 801, 809 [Sup Ct, Bronx County 2003]).
The plaintiff was awarded custody of the children by the Abu Dhabi courts. The decision from the Court of First Instance noted that the mother usually has the right to custody of the children unless proved otherwise. The defendant made no showing to refute the custody award to the plaintiff. This award of custody to the plaintiff was affirmed following two appeals, including an appeal to the highest court in Abu Dhabi. The defendant thereafter petitioned the Abu Dhabi court to change custody from the plaintiff to the defendant based upon the fact that he had moved to the United States. Defendant’s application was denied by the Court of First Instance and affirmed on appeal.
*810 Neither party alleges that any of the child custody laws of the UAE violate fundamental principles of human rights or that the Abu Dhabi courts were without jurisdiction to determine custody. Nor does this court find any such violation or lack of jurisdiction. Therefore, based upon the principles of comity and pursuant to Domestic Relations Law § 75-d, this court must recognize and enforce the custody determination of the Abu Dhabi courts awarding plaintiff custody.
Based upon this court’s recognition of the award of custody to the plaintiff, the defendant’s cross motion seeking custody of the children shall be treated as a motion to modify the custody order. Although neither party contests this court’s jurisdiction to modify the Abu Dhabi custody award, as a preliminary matter, this court determines that it has jurisdiction to hear and determine this issue pursuant to Domestic Relations Law § 76-b, based upon the children’s residence in New York for at least six consecutive months prior to the commencement of these proceedings (Domestic Relations Law § 76 [1] [a]). Additionally, the parties and the children no longer reside in the UAE (Domestic Relations Law § 76-b [2]).
“A modification of an existing custody arrangement should be allowed only upon a showing of a sufficient change in circumstances demonstrating a real need for a change of custody in order to insure the child’s best interests” (Sano v Sano, 98 AD3d 659, 659 [2d Dept 2012]). “Only when a party demonstrates a sufficient change in circumstances since the entry of the prior order may a court modify an existing order .... Once this threshold showing has been made, the court must then undertake an analysis of the best interests of the child” (Matter of Langley v Spano, 58 AD3d 1082, 1082-1083 [3d Dept 2009]). “A noncustodial parent seeking a change of custody is not automatically entitled to a hearing but must make some evidentiary showing sufficient to warrant a hearing” (see McNally v McNally, 28 AD3d 526, 527 [2d Dept 2006]; see also Matter of Dana H. v James Y., 89 AD3d 844 [2d Dept 2011]; Matter of Bauman v Abbate, 48 AD3d 679 [2d Dept 2008]). Although a change in custody should follow a hearing, “[t]his does not mean, however, that a court is required to conduct a hearing whenever a party moves for a change in custody no matter how speculative and frivolous are the reasons advanced in favor of the application” (David W. v Julia W., 158 AD2d 1, 6 [1st Dept 1990]). Where the movant’s assertions are largely unsubstantiated or conclusory, there is no right to a hearing (Matter of Grant v Hunter, 64 AD3d 779 [2d Dept 2009]).
*811 The defendant makes unsubstantiated claims that during the time of his temporary custody of the children following their return to New York, they advised him of incidents that occurred during their residence with the plaintiff in Abu Dhabi. He claims the children told him that while living in Abu Dhabi with the plaintiff, she would leave them alone until 2:00 a.m. or overnight with a maid who could not communicate with them in either Arabic or English; allow the son, then age six, to walk to a grocery store across a busy street by himself; allow the children to share a hotel room with her and her boyfriend, with the plaintiff sleeping in one bed with the children, and the boyfriend sleeping in another bed; and fail to bathe or properly feed the children. The defendant also alleges the plaintiff failed to have clear communication with one child’s school regarding his placement for the following school year.
The Attorney for the Children submits an affirmation indicating he does not support defendant’s allegations, and affirms that the children are “ready to have custody returned to their mother.”
The plaintiff categorically denies the defendant’s allegations. Her emails to the school indicate she did communicate with them regarding the child’s class placement. Nevertheless, this allegation alone is insufficient to warrant a hearing on custody. The balance of the defendant’s allegations are based upon unsubstantiated hearsay and fall short of the evidentiary showing required to warrant a hearing on custody (see Matter of Davis v Venditto, 45 AD3d 837 [2d Dept 2007]). He fails to submit affidavits or other evidence in support of his self-serving allegations against the plaintiff. The defendant is not specific as to the time frame of the plaintiffs alleged behavior except to say it occurred sometime when the children resided in Abu Dhabi with the plaintiff, which was well over a year ago. Defendant claims he only learned of these incidents when the children were residing with him after returning from Abu Dhabi in June 2011. There is no doubt that the defendant knew of these allegations by December 2011, as he described them in an email to the Attorney for the Children on December 16, 2011. Had the defendant any legitimate concerns that the plaintiffs behavior was detrimental to the best interests of the children, he would have raised these stale allegations on February 3, 2012 at the emergency hearing on custody before Judge Neary. However, he remained silent regarding these “grave concerns” and instead voluntarily stipulated to sharing joint temporary custody of the *812 children with the plaintiff. The defendant’s inaction with respect to these allegations at the February hearing and his consent to temporary joint custody places in question the timeliness of his claims and their merits.
Moreover, the defendant’s conclusory allegations against the plaintiff while she lived with the children in Abu Dhabi must be viewed in light of the totality of the circumstances. The defendant was convicted in the Abu Dhabi courts of acts of domestic violence against his wife, some of which it appears took place in front of the children. The defendant never denied using physical force against the plaintiff, but defended the charges claiming he had the right to use physical means to discipline his wife and that her injuries were not as severe as she claimed.[11] The defendant appealed the conviction to the highest court in Abu Dhabi, with each court rejecting his defense and affirming the conviction.
In the civil divorce action, the plaintiff claimed she was entitled to a divorce on the ground of “harm and damage” in that the defendant failed to support the family and he verbally and physically abused the plaintiff. The plaintiff claimed that *813 the defendant had beaten her, causing her to sustain many injuries, which precipitated her to file for divorce. Despite the criminal conviction for assault, the defendant continued to raise as a defense his right to use physical force to discipline his wife. He also promoted another defense — that “the [pjlaintiff did not . . . fulfill her duties as a wife towards him and used to go out of the house without his permission.”[12] The court rejected the defendant’s arguments and granted the plaintiff a divorce on the ground of “harm and damage.” The plaintiff was awarded various forms of financial relief from the defendant and custody of the children. Once again, the defendant refused to accept the court’s rulings and appealed the judgment to the highest court, losing at every level.[13]
After exhausting his legal rights in the UAE, the defendant returned to the United States, abandoning the plaintiff and the children in Abu Dhabi, and stopped paying court-ordered support.[14] To further complicate matters, he took the children’s passports with him, making it impossible for them to leave the UAE without intervention from the United States Embassy, a process that was protracted and costly.
To further exacerbate the plaintiffs already difficult circumstances, while the defendant remained in the United States he initiated proceedings in the Abu Dhabi courts to obtain custody of the children. After considering the facts of the case and the arguments of the parties, the court dismissed the defendant’s case and ordered him to pay all expenses in connection with the proceedings. Once again, the defendant appealed the decision to the Court of Appeal, which affirmed the decision denying the defendant’s application for a change in custody.
As a result of the defendant’s abandonment of his family in the UAE and his failure to pay support and other financial obligations in accordance with the judgment of divorce, the plaintiff was compelled to care for the children and meet most, if not all, of their financial needs on her own, while working full time. Needless to say, the plaintiff was required to assume all of the parenting responsibilities, including the difficult and sensitive charge of attending to the emotional needs of the children, already scarred by the divorce.
*814 When the plaintiff was finally able to return to the United States with the children with the assistance of the United States Embassy, the defendant immediately began to relitigate the custody issues in the New York courts. The decisions of the Abu Dhabi courts do not paint the defendant in a favorable light. Despite his continued obstinance in refusing to accept the rulings of the Abu Dhabi courts that are binding upon him, he will not be given a second chance to relitigate those rulings adverse to him in the New York courts. Moreover, he has failed to make an evidentiary showing sufficient to warrant a hearing on the issue of modification of the Abu Dhabi custody order.
Based upon the foregoing, this court recognizes the custody determinations of the Abu Dhabi courts awarding the plaintiff custody of the children. The defendant’s allegations regarding the plaintiffs behavior are unsupported and conclusory, and allegedly occurred well over a year prior to the parties’ agreed upon temporary joint custody stipulation. Accordingly, the defendant’s application for modification of the custody award rendered by the Abu Dhabi courts to grant him custody of the children is denied. That portion of the parties’ so-ordered stipulation dated February 3, 2012, whereby the parties agreed to temporary joint custody is hereby vacated and the custody order of the Abu Dhabi courts awarding the plaintiff custody shall be recognized and entered as a domestic order of custody. The parties shall endeavor to work with each other to enter into an agreed upon access schedule for the defendant.
Counsel Fees
Plaintiff moves for counsel fees in the amount of $25,000 pursuant to Domestic Relations Law § 237. She submits a copy of the retainer agreement dated October 6, 2011, invoices for counsel fees since October 1, 2011, and a copy of her net worth statement and annexed 2010 income tax return. Plaintiff states she has incurred counsel fees of approximately $28,051 from December 2011, through April 30, 2012. Her counsel’s affirmation sets forth her hourly rates, the amounts charged to her client, and the amounts paid or to be paid.
The plaintiffs net worth statement indicates she is currently unemployed. At her last position in the UAE she earned $57,460, as reflected on her 2010 income tax return. Her current expenses exceed $5,000 per month, which is largely credit card debt incurred to support herself and the children. She has incurred total credit card debt in excess of $100,000, has liquidated her 401(k) in the approximate amount of $40,000, and has sold her *815 jewelry to pay living expenses after the defendant ceased paying support. The mortgage and home equity line of credit on the marital residence are in arrears, a foreclosure action is pending, and the parties owe approximately $30,000 in real estate taxes. The plaintiff has $16,000 in a savings account in the UAE that is subject to forfeiture to her former employer. The parties own a house in Egypt and an unimproved plot of land. The value of this real estate is unknown.
The defendant cross-moves for counsel fees as well. He fails to submit a net worth statement in support of his application. His moving papers do not indicate the amount of counsel fees he seeks, and no bills or other indication of services rendered or fees incurred are submitted with his cross motion. In a reply affirmation in further support of the cross motion, defendant’s counsel attempts to explain his fees and includes two bills for services rendered in connection with this action.
The court may, in its discretion and in certain actions, direct either spouse to pay the other’s counsel fees to enable that spouse to carry on or defend the action as justice requires, having regard to the circumstances of the case and of the respective parties (Domestic Relations Law § 237 [a]; DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). “[I]n exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties’ positions.” (Id.) “An appropriate award of attorney’s fees should take into account the parties’ ability to pay, the nature and extent of the services rendered, the complexity of the issues involved, and the reasonableness of the fees under all of the circumstances” (Grumet v Grumet, 37 AD3d 534, 536 [2d Dept 2007]). “An evaluation of what constitutes reasonable counsel fees is a matter generally left to the sound discretion of the trial court . . . which is often in the best position to judge those factors integral to the fixing of counsel fees” (Morken v Morken, 292 AD2d 431, 431 [2d Dept 2002]).
In reviewing all of the circumstances of the case, including the financial circumstances of the parties and the relative merits of the parties’ positions, the equities favor an award of counsel fees to the plaintiff. The legal proceedings in this matter span nearly four years and have taken place in the courts of two countries. Having exhausted all of his legal remedies in the UAE, the defendant attempts to relitigate the same issues here in New York, with the hope of receiving a more favorable result. *816 His insatiable desire to continue litigating against the plaintiff has caused the legal proceedings in this matter to become tortured, protracted, and unnecessarily costly.
The defendant’s conduct in continuing to oppose the divorce and seek custody of the children, notwithstanding the Abu Dhabi judgment of divorce and order of custody, is unreasonable. His failure to abide by his agreement in open court to retain temporary custody of the children for a limited time period solely to allow the plaintiff to return to the UAE to wind down her affairs is, likewise, unreasonable. His continued refusal to accept the terms of the binding court orders rendered by the Abu Dhabi courts has caused the plaintiff to expend considerable unnecessary legal fees and expenses.
Moreover, the parties’ financial circumstances reveal that the defendant is in a better position to pay counsel fees than the plaintiff. It appears that the defendant has provided no support to the plaintiff or the children since he returned to the United States in 2010 despite the order of support rendered by the Abu Dhabi court.[15] The plaintiff is unemployed although she has been looking for work. The defendant on the other hand, has been employed since returning to the United States, first as an assistant driver with United Parcel Service and, more recently, with an unspecified private company at a New York airport.
Based upon the totality of the circumstances of the case, an award of counsel fees to the plaintiff is appropriate. However, “[w]here an action or proceeding is not one expressly included in [Domestic Relations Law §] 237, no award of counsel fees may be made thereunder” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C237:2). “It is well settled that Domestic Relations Law § 237 does not provide for an award of counsel fees in actions to enforce or rescind prenuptial agreements” (Schapiro v Schapiro, 204 AD2d 87, 88 [1st Dept 1994]; Ravel v Ravel, 235 AD2d 410 [2d Dept 1997]). Since an action to enforce a premarital or postmarital agreement is a contract action rather than a matrimonial action, this court may not award counsel fees to the plaintiff in connection with her seeking an order advancing the validity of the mahr agreement (see generally Lamborn v Lamborn, 56 AD2d 623 [2d Dept 1977]).
*817 Plaintiffs counsel’s reliance on Domestic Relations Law § 237 (a) (4) for an award of counsel fees is misplaced. This section allows such an award in an action “to declare the validity or nullity of a judgment of divorce rendered against a spouse who was the defendant in any action outside the State of New York and did not appear therein where such spouse asserts the nullity of such foreign judgment” (Domestic Relations Law § 237 [a] [4]). By its very language, this section is applicable only when a foreign divorce is granted against a spouse who was the defendant and did not appear in that action. That is not the set of facts before this court. The defendant appeared in the divorce action in the UAE, submitted to its jurisdiction not only to grant the divorce, but to determine the issues of support, custody, the validity of the mahr agreement, and other ancillary issues. As such, no counsel fees may be awarded to the plaintiff in connection with efforts to obtain a declaration as to the validity of the foreign judgment of divorce pursuant to Domestic Relations Law § 237 (a) (4).
To the extent that any portion of plaintiffs counsel fees were incurred in connection with an attempt to obtain maintenance or distribution of property under the foreign judgment of divorce, she is entitled to an award under Domestic Relations Law § 237 (a) (5). This provision was added to Domestic Relations Law § 237 (a), as part of the significant package of domestic relations legislation signed into law on August 13, 2010 by Governor David Paterson. (See generally Governor’s Approval Mem, Bill Jacket, L 2010, ch 329 at 6.) This legislation included many long awaited reforms, the most noteworthy being the establishment of a new “no-fault” ground for divorce,[16] a formulaic method to determine the presumptively correct amount of temporary maintenance,[17] and a rebuttable presumption in favor of an award of counsel and expert fees to the less monied spouse.[18] Despite the intense focus on this new legislation, or perhaps because of it, the addition of subdivision (a) (5) to Domestic Relations Law § 237, which permits a counsel fee award in an action brought to obtain maintenance or distribution of property following a foreign judgment of divorce, has gone largely unnoticed. (See generally Mattwell v Mattwell, 194 AD2d 715 [2d Dept 1993]; Sullivan v Sullivan, 155 Misc 2d 440 *818 [Sup Ct, NY County 1992] [holding that courts are statutorily authorized to award counsel fees in proceedings to obtain a distribution of marital property following a foreign judgment of divorce, as they fall under the general category of matrimonial actions set forth in Domestic Relations Law § 236 (B) (2)].)
The plaintiff may also be awarded counsel fees she incurred to defend against the defendant’s attempts to obtain custody of the children. Domestic Relations Law § 237 (b) gives the court discretion to award counsel fees in child custody proceedings when warranted under the circumstances of the case (see Matter of O’Shea v Parker, 16 AD3d 510 [2d Dept 2005]; Matter of Ross v Ross, 96 AD3d 856 [2d Dept 2012]). Domestic Relations Law § 237 (b) also authorizes an award of counsel fees to the plaintiff to the extent her order to show cause concerns the maintenance of the children. Since this court cannot determine what portion of plaintiffs counsel fees were incurred on the issues of custody, maintenance, distribution of property, or maintenance of the children, plaintiffs counsel is directed to submit a separate affidavit detailing the counsel fees and expenses incurred on these issues and the plaintiff shall be awarded reasonable fees and expenses incurred therewith for the reasons set forth above.
The defendant shall have an opportunity to challenge the reasonableness of the fees. “[A] party resisting a counsel fee application is entitled to an evidentiary hearing as to the extent and value of the attorney’s services. [The right to a hearing includes] the right to cross-examine the attorney applying for the fees” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C237-.5; Scheinkman, West’s McKinney’s Forms Matrimonial and Family Law § 19:12 [2011]). In the absence of a stipulation agreeing to submit counsel fees to the court based upon affirmations alone, a hearing is required. (See Silverman v Silverman, 193 AD2d 595 [2d Dept 1993].) The parties are encouraged to resolve the counsel fee issue by agreement or by the submission of papers alone and are forewarned that as part of any counsel fee determination, in addition to considering the reasonableness of the plaintiffs fees, this court shall consider and weigh heavily the “tactics of a party in unnecessarily prolonging the litigation” (Powers v Wilson, 56 AD3d 639, 641 [2d Dept 2008]).
The defendant’s counsel fee application is denied based on the parties’ respective financial circumstances and the lack of merit to his application. Moreover, the defendant’s failure to *819 submit a net worth statement renders that portion of his cross motion for counsel fees defective (Bertone v Bertone, 15 AD3d 326 [2d Dept 2005]; see also 22 NYCRR 202.16 [k] [2]).
Based upon the foregoing, it is hereby ordered, that the civil divorce decree and custody award rendered by the Abu Dhabi courts, including the support and financial provisions set forth therein, are entitled to recognition, registration, and entry as a judgment of divorce and orders of custody and support in New York based on the principles of comity; and it is further ordered, that the judgment of the Abu Dhabi courts declaring the mahr agreement valid and enforceable against the defendant in the amount of $250,000 may be entered and enforced as a money judgment under CPLR article 53; and it is further ordered, that the support provisions of the foreign judgment of divorce are recognized under the principles of comity and the plaintiff may convert the Abu Dhabi support order into a New York support order; and it is further ordered, that to the extent plaintiff’s motion seeks a judgment against the defendant for support arrears under the Abu Dhabi judgment of divorce, it is denied with leave to renew in accordance with this decision; and it is further ordered, that the defendant’s cross motion seeking a modification of the custody award rendered by the Abu Dhabi courts to grant him custody of the children is denied; and it is further ordered, that the portion of the parties’ so-ordered stipulation dated February 3, 2012, whereby the parties agreed to temporary joint custody is hereby vacated and the custody order of the Abu Dhabi courts awarding the plaintiff custody shall be recognized and entered as a domestic order of custody; and it is further ordered, that the plaintiff is awarded reasonable counsel fees and expenses incurred in connection with the issues of custody, obtaining maintenance or distribution of property following the foreign judgment of divorce, and the maintenance of the children; and it is further ordered, that the plaintiff shall within 20 days from the date of this decision and order, submit an affidavit and billing records for counsel fees and expenses incurred in connection with the issues of custody, obtaining maintenance or distribution of property following the foreign judgment of divorce, and the maintenance of the children; and it is further ordered, that to the extent the parties fail to resolve the counsel fee issue, the defendant shall within 15 days from the receipt of plaintiffs submission, submit his opposition, and specifically indicate whether he waives a hearing on the reasonableness of the fees incurred and agrees to have the issue determined by this court on the papers alone.
*820 The court has considered the additional contentions of the parties not specifically addressed herein and finds them to be without merit.
All other relief requested and not decided herein is denied.
The plaintiff shall settle the judgment in accordance with this decision and order within 30 days of the date of this decision served with notice of entry.

. The original copies of the official documents are maintained by plaintiffs counsel. The defendant makes no challenge to the authenticity of the documents or the translation. Nevertheless, the documents are admissible in the form submitted pursuant to CPLR 4542 (a).

. It is appropriate for this court to consider the affidavits of plaintiffs experts on the laws of the UAE and Islamic law, and the interpretation of the UAE judgments, decrees, and related documents (see Rawitz v Rawitz, 31 AD2d 832, 833 [2d Dept 1969]; Jann v Cassidy, 265 AD2d 873, 874 [4th Dept 1999]).

. This court takes judicial notice of the Constitution and laws of the UAE referenced in this decision and order pursuant to CPLR 4511 (b).

. The defendant was convicted of assault against the plaintiff in a country where it is reported that women continue to face legal and economic discrimination, domestic abuse against women is widespread, women remain reluctant to file formal charges of abuse for social, cultural, and economic reasons, and men are allowed by law “to use physical means, including violence, at their discretion against female and minor family members” (see US Dept of State, Bureau of Democracy, Human Rights and Labor, Country Reports on Human Rights Practices for 2011, United Arab Emirates).

. “In order for a woman to obtain a divorce with a financial settlement, she must prove that her husband has inflicted physical or moral harm upon her, has abandoned her for at least three months, or has not maintained her upkeep or that of their children. Alternatively, women may divorce by paying compensation or surrendering their dowry to their husbands. Sharia law no longer applies to child custody cases. In August 2010 the Federal Supreme Court adopted the ‘best interests of the child’ standard to determine which parent should receive custody, regardless of Sharia law’s prescription based on the child’s age” (see US Dept of State, Bureau of Democracy, Human Rights and Labor, Country Reports on Human Rights Practices for 2011, United Arab Emirates).

. The plaintiff acknowledges receiving 313,714.60 AED from defendant’s employer, which she values at approximately $87,000.

. The defendant values the 313,714.60 AED from his employer at $85,000.

. See US Dept of State, Bureau of Democracy, Human Rights and Labor, Country Reports on Human Rights Practices for 2011, United Arab Emirates.

. The plaintiff acknowledges receiving 313,714.60 AED from defendant’s employer, which she values at approximately $87,000.

. The defendant values the 313,714.60 AED from his employer at $85,000.

. In the decision of the Court of First Instance on the criminal prosecution annexed to plaintiffs order to show cause as exhibit B, the defendant acknowledged the incident between the parties, but claimed he only “pushed” the plaintiff. The court found that the medical report supported the plaintiffs version of the incident and convicted the defendant of assault. As noted by the decisions of the Court of Appeal and Court of Cassation annexed to plaintiffs motion by order to show cause as exhibits C and D, the court found that as a result of the defendant’s assault, she sustained injuries that rendered her “unable to perform her personal tasks for more than 20 days,” as confirmed by the medical report. In the decision of the Court of Cassation annexed to plaintiffs order to show cause as exhibit D, the defendant argued on appeal that
“pertaining to the victim’s bruises on her hands, such bruises were caused by the appellant after dragging [his] wife into the bedroom so as to continue their fight away from their children. . . . Moreover, the judgment was inconsistent with the law, for the bruises on the victim’s hands appeared to be simple, and shall not criminalize the appellant as this is a man’s legal right upon his wife to discipline her, in accordance with article 53 of the Federal Penal Code. Hence the judgment is erroneous, and must be challenged.”
The defendant further argued that he did not cause the plaintiffs injuries, as they were sustained when “after throwing herself on the bed to kick him . . . she hit her back against one of the bed sides which has resulted in the lower lip injury mentioned in the said medical report.” In affirming the conviction, the court “rejected the statements made by the appellant, since the victim’s bruises were deemed severe and the husband has crossed his legal limits to ‘discipline’ his wife.”

. See decision of the Court of First Instance annexed to plaintiffs order to show cause as exhibit E.

. The decision of the Court of First Instance was modified to the limited extent of reducing the Udda alimony from 30,000 AED to 15,000 AED.

. Defendant’s compliance with the Abu Dhabi court order requiring him to pay for the family’s housing expenses is in dispute.

. The amount, if any, the defendant has paid for the family’s housing expenses through May 14, 2011 while they were living in the UAE remains in dispute.

. Domestic Relations Law § 170 (7): Irretrievable breakdown of the marriage for a period of at least six months.

. Domestic Relations Law § 236 (B) (5-a).

. Domestic Relations Law §§ 237 and 238.